D. S. PRIEST, Appellant v. GEORGE MAXWELL, Road Supervisor, and JULIA MAXWELL, Defendants, GEORGE MAXWELL, Intervener.

**Drainage of surface water:** OBSTRUCTION OF NATURAL FLOW: INJUNCTION. Where defendants constructed a dike so as to turn the natural flow of surface water onto plaintiff's land at a different place and in a larger quantity than when flowing naturally, plaintiff may have an injunction restraining the continuance of such dike, and may protect himself by a similar dike so long as defendants continue to so divert the water onto his land.

*Appeal from Page District Court.* —HON. W. R. GREEN, Judge.

WEDNESDAY, JULY 12, 1905.

SUIT in equity for an injunction. Relief denied, and the plaintiff appeals. The opinion states the case. — *Reversed*.

*J. M. Junkin, Frederick Fischer,* and *Jennings & Crose,* for appellant.

*H. E. Parslow,* for appellees.

SHERWIN, C. J. — The plaintiff is the owner of the south one-half of the northeast quarter of section No. 9, in township No. 69, range 39, and of other lands adjoining the same on the south and west. The defendant Julia Maxwell is the owner of the northwest quarter of section 10 in the same township and range, which is east of the plaintiff's land, and the lands of these parties are separated by a public highway running north and south. The intervener, George Maxwell, is the owner of the southeast quarter of section 4,

which is north of section 9, and separated from the plaintiff's land in the northeast of 9 by the north half of the quarter, which is owned by Jno. E. M. Porter. This land is in the eastern edge of the Nishnabotana river valley, at the foot of the hills forming the east side of the valley, and is what is known as " second bottom " land. The general course of the valley in the locality in question is from the northeast to the southwest, and the draws and water courses from the high lands on the east uniformly run in a northwesterly direction into the valley. There is a draw that crosses the south line of the northwest quarter of 10 very near the center thereof, and the watershed on the east thereof extends in a northwesterly direction across the north and south center line of the quarter until it reaches a point near the center of the quarter, where it runs off to the northeast. The watershed on the west of the draw where it crosses the south line of the quarter also runs in a northwesterly direction for some distance, when it makes a turn and runs south. Coming from the southeast through the draw and crossing the south line of the northwest quarter of 10 near its center is a natural, well-defined watercourse, designated by the surveys as a " branch." This " branch " originally ran in a northwesterly direction, and, when not overflowed, it carried the water from the draw northwest toward the southeast corner of the Porter 80, where the water divided or spread out, a part of it going on to the northwest and a part going west on to the plaintiff's land. The highway between sections 3 and 4 and 9 and 10 was established prior to 1883. Soon after 1883 the road was graded, and a small culvert was put in the roadway near where a part of the water naturally crossed it. After this grading had been done, the intervener, Maxwell, who is the husband of Julia Maxwell, built a dike from the west line of his wife's land east across the northwest end of the eroded channel of the branch in question, and this dike was afterwards built west by him to connect with the grade of the highway. It is fully established by the evidence that

before this dike was built some of the water coming down through the draw and branch ran north over the Maxwell land beyond where the dike is located, and that the erection thereof diverted such water from its natural course, and threw it in much larger quantities into the highway and over upon the plaintiff's land. To meet this situation, the plaintiff diked his land opposite the culvert. The culvert was afterwards moved south two or three times and increased in size until at the time of the commencement of this action it had developed into a bridge fourteen feet wide, and was located south of the original culvert some eight or ten rods. The plaintiff continued his dike south to meet the changed conditions. In the meantime the channel of the branch on the Maxwell land had been changed, either by the usual cultivation of the land or purposely, so that for a number of years prior to this action the water flowed west to the highway where the present bridge is located.

As we view the case, it makes but little difference whether the Maxwells changed the course of the branch or not, although the weight of the evidence shows that it was purposely done by some one, and the presumption is that it was authorized by them. Shortly before this suit was commenced, George Maxwell, the intervener, was made road supervisor of the district including the highway in question, and upon his threatening to tear down the plaintiff's dike suit was commenced and a temporary restraining order issued. The office of road supervisor was afterwards abolished by the legislature, and he then intervened, alleging, as did Mrs. Maxwell in her answer, that the plaintiff's dike diverted the water onto their land in unnatural quantities, and that it was therefore a nuisance. The case was referred to a referee, who took the evidence and reported findings against the plaintiff. The report was confirmed by the district court, and the plaintiff was ordered to remove so much of his dike as obstructed the flow of water onto his land through the roadway at the bridge in question. The prin-

cipal question in the case is one of fact, for the appellees concede that if the dike built by them obstructed the natural flow of the water, and by so doing cast it upon the plaintiff in an unusual quantity, or at a different point, to his damage, he had the right to dike against it for his own protection. But they claim that their dike was built to protect the northwest of 10 from the backwater caused by the road grade, and that they might lawfully dike against it if by so doing they caused no damage to the plaintiff. Both positions are correct so far as the law alone is involved. *Keck v. Venghause,* 127 Iowa, 529, and cases cited and reviewed.

Every material part of the preceding statement of fact is fully proven by the record, and, while a great number of witnesses testified in a general way as to the course of the water over the lands in question before the road was graded, the practically undisputed physical facts so completely negative the conclusion which the referee and trial court deduced from their testimony as to render it of but little value. Two surveys of these premises were made for the purposes of the trial, one for each side of the controversy, and both by competent and reliable men. They practically agree as to the topography of the land involved in so far as their work followed the same lines, and we have been greatly aided by a careful study of the original maps made by them, and filed as exhibits in the case. Where they covered the same ground, their elevations are practically the same, and the great number of elevations shown by the plaintiff's map where the defendants' surveyor took none are in no case contradicted by any evidence in the case, except where the eyes alone of some of the witnesses have fixed an elevation that is contradicted by the instruments of both surveyors. That the effect of the Maxwell dike has been to obstruct the natural flow of the water and to cast it upon the plaintiff in both a greatly increased quantity and for years at an entirely different place is proven to our

entire satisfaction, and that he has been damaged thereby is undisputed. In building his own dike he did not more than the law permits, so far as the parties to this case are concerned, and as against them he is entitled to maintain his dike, so long, at least, as they continue to divert the water onto his land by their own dike. *Keck v. Venghause, supra; Stinson v. Fishel,* 93 Iowa, 656; Wood's Law of Nuisance, 524; *Finkbinder v. Ernst,* 126 Mich. 565 (85 N. W. 1127); *Merritt v. Parker,* 1 N. J. Law, 460. The judgment below was wrong, and the case is reversed, and remanded for judgment in accordance with this opinion. —*Reversed.*