ED PATE, Appellee, v. JAMES ROGERS, Appellant, et al., Appellees.

**WATERS AND WATERCOURSES:** Surface Waters—Diversion of Natural Drainage. Principle reaffirmed that a servient landowner may not lawfully divert the natural flow of surface waters.

**HIGHWAYS:** Construction, Improvement, and Repair—Drainage. It is the duty of highway authorities to so locate culverts as to care for drainage in its natural course. It is persuasive that a landowner was present when a culvert was located, and did not object to such location.

**WATERS AND WATERCOURSES:** Surface Waters—Drainage Through Highways. A servient landowner may not demand that ditches be so constructed and maintained *in the highway* as to wholly relieve his lands from the burden of surface waters naturally flowing thereover.

*Appeal from Johnson District Court.*—R. G. POPHAM, Judge.

APRIL 8, 1922.

ACTION in equity by the owner of the dominant estate, to enjoin the owner of the servient estate from obstructing the flow of surface water in a natural depression or watercourse, causing the same to overflow his estate, and to compel the defendant board of supervisors and township trustees to maintain a proper opening in the highway for the escape of the water, and to prevent the same from being held back on his premises. Relief was granted as prayed, and the defendant appeals.—*Affirmed*.

*J. M. Otto* and *Dutcher, Davis & Hambrecht,* for appellant.

*Wilson & Evans* and *C. M. Miller,* for appellees.

STEVENS, C. J.—Plaintiff, Edward Pate, and the appellant, James Rogers, are each the owner of 80 acres of land in Clear Creek Township, Johnson County. The two tracts are separated by a north and south highway, plaintiff's lying on the east side thereof. The general slope of the surface of the highway, which is graded but slightly, is toward the north. The elevation of the highway at the north side of the two tracts is eight or nine feet lower than at the south side. Ditches which carried the water north have been maintained a part of the distance on each side of the highway for years. The ditch on the east side of the highway, as it approaches within a few rods of the south side of plaintiff's tract, deepens considerably, and, near the south end, extends northeast across his premises and those of a neighbor, connecting with a small creek, through which the water is carried off.

1. WATERS AND WATERCOURSES: surface waters: diversion of natural drainage.

In the fall of 1917, the township trustees constructed a wooden box culvert across the highway, a short distance south of the center of the tract, thereby providing an opening for the surface water accumulating in the vicinity, to cross from the east to the west side thereof. The soil in the highway and in tracts adjoining in the vicinity of the culvert and to the south thereof is very sandy. Appellant has resided on his tract all of his life, and plaintiff on his since March 1, 1914. A contour map offered in evidence by plaintiff discloses a small ridge, commencing on the land of plaintiff some distance southeast of the culvert and extending in a northwesterly direction, reaching the highway about 15 rods south of the culvert and continuing in a northwesterly and northerly direction across the land of appellant. The elevation of this ridge above the surrounding surface is not great, but is sufficient to divide the course of drainage.

In the spring of 1915, appellant, by plowing and digging, opened the ditch on the west side of the highway, throwing up a small dike near his fence and cutting through the ridge, thereby causing the water to flow north in the highway, and

ultimately into the ditch on the east side thereof, and across plaintiff's premises. Shortly after the culvert was constructed, appellant nailed two 6-inch planks, one above the other, to his fence opposite the culvert; whereupon plaintiff commenced this action to enjoin the defendant from maintaining this and the other obstructions alleged to have been placed by him along the fence on the west side of the highway so as to divert the water to the north along the highway and onto his premises. He later filed an amendment to his petition, making the defendant board of supervisors and township trustees of Clear Creek Township parties, alleging, as he had in his original petition, that the natural flow of surface water from plaintiff's premises is from the southeast to the northwest across the highway and upon the lands of appellant, and prayed that the defendant officers be required to construct and maintain an adequate opening, or openings, in the highway, so as not to obstruct the flow of surface waters to the northwest in the natural course of drainage. The defendant board of supervisors and township trustees filed a joint answer, admitting substantially the allegations of plaintiff's petition, and averring that the culvert was located and constructed with the knowledge, consent, and acquiescence of the defendant, and asked that the court determine and fix the duty of these defendants and direct them in the premises.

The defendant Rogers, for answer to the petition and amendment thereto, after admitting the ownership of the tract on the west side of the highway, denied the remaining allegations thereof, denied specifically that he had in any way, by placing obstructions in the highway, backed up or diverted the flow of surface water, and averred that, if the water was obstructed, it was because the culvert had become filled with sand, so as to prevent the water from passing through it; and that the natural flow of surface waters from the lands of plaintiff for more than ten years had been to the north along the east side of the highway; and that he has acquired a prescriptive right to have the same carried away from his premises through said ditch. Before the case came to trial, the defendant, in compliance with an order of court, removed the plank he had placed opposite the culvert.

As indicated by the foregoing statement of the issues, it is the contention of appellant that there is no natural depression

or watercourse across his lands from the southeast; that the culvert is not constructed in line with the natural course of drainage across the highway; that the same collects the water and tends to throw it upon his premises in a greatly enlarged quantity and at an unnatural place; to his damage; that he in no way obstructed or diverted the surface water coming from the lands of plaintiff from its natural and ordinary course; and that, by reason of the existence and maintenance of the ditches in the highway, he has acquired a prescriptive right to have the surface water carried to the north through said ditches and across the premises of plaintiff and others to Clear Creek. The court below found against the appellant upon all of these contentions.

The natural flowage of surface water over and across the lands of both parties is well shown by the elevations on the contour map above referred to. The elevations shown thereon are not disputed by appellant. The general fall of the surface of the ground on the east side of the highway south of the ridge, as shown thereby, is toward the northwest, and north of the ridge to the northwest for a considerable distance, and then to the northeast without reaching the highway; whereas the general slope of the surface south of the ridge on the west side of the highway is north and northwest, and north of the ridge, northwest and north towards plaintiff's premises and into the ditch in the highway, which at this point is several feet deep. For example, the elevation on appellant's premises approximately 100 feet immediately west of the culvert is about four feet lower than the surface 100 feet immediately east of the culvert. From the first point, the fall is quite rapid to the northwest for a considerable distance, although the elevation changes considerably across appellant's farm. The larger part of both tracts, except for the fall indicated, is generally level. While there is some dispute in the evidence as to the portion of the surface water that crosses the highway onto the land of appellant, the general course of drainage, when not interfered with, is clearly in that direction. This the contour map shows conclusively. Much of the water has undoubtedly for some time been carried north through the highway ditches. Appellant admits that he did some plowing on the west side of the highway, but claims that he did no more than to clean out the existing ditches. The preponder-

ance of the evidence, however, shows that he deepened the ditch to some extent, and threw a small dike or embankment along the west side thereof and close to his fence. The plaintiff testified concerning this matter as follows:

"The next spring after I moved on the place, the water commenced coming down the road—ran down the highway. The way that happened, men went up there and plowed it—threw a furrow up against the fence. I saw that done. Mr. Rogers did it. At that time, I told him I did not think he ought to be plowing there, and he said he would like to see me or any other damned man hinder him. He said, 'You may go and open your own ditch; that is what ditches are for—to carry water.' At the time he was plowing, the water was running, and it followed the plow right along. The furrow he was plowing was, I suppose, about three feet from the fence. He plowed several trips, and used the tile spade. On the first grade he threw up.a furrow toward the fence. When he came back up the little hill, he plowed both ways about to the little hill. I mean he came back empty to this little hill. The hill where he graded is between the present culvert and my garden. This grade I refer to as the little hill is about four or five rods north of the present culvert."

This testimony is corroborated by the testimony of other witnesses. Appellant gave his version of the plowing as follows:

"I did plow in the road from this new culvert south through there where it washed in the sand. I plowed up a grader ditch on the west side, running from there south. Plowed a grader ditch right along, beginning at the south line, plowed it to the south end of my land, where this tile ditch opens out. That tile ditch I refer to is Reed's. That tile didn't run across any of my land at that time, but afterwards it was put onto my tile down through my field. I never did any plowing north of the new culvert, not at any time. I didn't do the plowing all in one day. I would open it up after a big rain. I plowed out so this seep water which came down the middle of the road,—opened that up, so as to carry this seep water through the tile and take it off. I did no plowing of any kind or character north of the culvert. I know of no dike north of the culvert, and I never threw up a dike there."

In 1917, the township trustees caused the ditches in the

highway to be cleaned out with a grader. The men in charge of the work were instructed, however, not to cut through the ridge north of the culvert. They apparently forgot their instructions, and cut the ditch through the ridge. The evidence shows that the effect of the plowing, diking, and cutting in the ditch on the west side of the highway has greatly increased the flow of the surface water to the north and across the highway into the ditch on the east side thereof. Appellant testified that the ditch has been greatly enlarged in front of his yards by reason of the increased quantity of water flowing to the north, since the ridge was cut. While appellant testified that the plank placed by him opposite the culvert consisted of boards only a few feet in length, and so arranged in the ditch that they did not rise above the natural surface of the ground in his field, and in no way obstructed or interfered with the flow of surface water across his land, and that his only purpose in putting them there was to prevent the water from washing a hole under his hog-tight woven wire fence, thereby permitting his stock to escape, it is quite manifest that it would to some extent operate as a dam, to prevent the water from going over his premises, and that this latter effect was not overlooked by him. There is no ditch or drain, having well defined banks, across appellant's premises, but there is a depression or swale a portion of the way, which he admits is about 150 feet in width.

It is also argued by appellant that the natural effect of the construction of the culvert in the highway will be to collect surface waters in the vicinity thereof and cast the same upon his premises in increased quantities at a different place and in a different manner from which it would flow in the natural course of drainage, and that he has a right, under our holding in *Priest v. Maxwell*, 127 Iowa 744, 747, and *Thiessen v. Claussen*, 135 Iowa 187, and other cases, to prevent the same from being thus wrongfully cast upon him.

It is the duty, however, of the highway authorities to place openings in grades thrown up in the highway, so as to permit surface water to escape in its natural course of flowage from the higher to the lower lands; and plaintiff has done nothing of which appellant may complain. The doctrine of the cases cited is not applicable to

2. Highways: construction, improvement, and repair: drainage.

the facts of this case. Appellant was present when the trustees located the culvert, and made no objection whatever thereto, but apparently acquiesced in their conclusion that the place selected was the proper one for the culvert.

The alleged prescriptive right of appellant to have the surface water carried through the ditches in the highway is given scant attention by counsel in argument. No authorities are cited to the point. The mere maintenance of ditches in a highway by the public authorities for its protection, through which a portion of the surface waters accumulating in the highway was carried away from appellant's premises, surely does not entitle him to have the ditches enlarged and so constructed and maintained as to fully protect his land from overflow, or to change the natural course of drainage. Clearly, he acquired no right, under the facts of this case, by prescription. Plaintiff has suffered some damage by reason of the enlargement of the ditch in the highway in front of his yards, and in being compelled, in part by the wrongful acts of appellant, to receive large quantities of surface water to which his premises are not subservient. It is true that the capacity of the ditch on his premises is adequate to carry the water reaching it to the creek, but we cannot say that he has not and will not suffer some damages on account of defendant's conduct. Such would seem to be the natural result of the obstructions placed at the fence and the change in the watercourse. The question of damages is the most doubtful of any; but we think, upon the facts shown, that the evidence warranted the decree below.

3. WATERS AND WATERCOURSES: surface waters: drainage through highways.

The decree of the court enjoined the defendant Rogers from diverting or changing the flow of water from its natural course, or obstructing such as would naturally come upon his premises and casting it upon plaintiff, and directed the remaining defendants to construct and maintain the surface of the highway and ditches on the sides thereof from the culvert north, so as not to divert the water away from its natural course so as to flow in unnatural quantities in front of or over the premises of plaintiff. All of the costs were taxed to the appellant.

While it is apparent that the problem of plaintiff and defendant is a rather difficult one to solve in the interest of good

husbandry, their respective rights are correctly defined by the court in its decree, and we discover no reason for interfering therewith. A more detailed discussion of the testimony, which has been read with care, would serve only to extend this opinion without profit to any of the litigants. The decree and judgment of the court below is, therefore,—*Affirmed.*

EVANS, ARTHUR, and FAVILLE, JJ., concur.