CASPER SCHWARTZ, Appellant, v. WAPELLO COUNTY et al., Appellees.

No. 39315.

OCTOBER 15, 1929.

*Gilmore & Moon,* for appellant.

*E. K. Bekman,* County Attorney, and *E. K. Daugherty,* for appellees.

WAGNER, J.—The appellant owns a farm bordered on the

north by a highway, which is under the jurisdiction of the board of supervisors. The farm to the north of the highway is owned by Tennyson. The appellant seeks to enjoin the appellees from installing a culvert in a swale or draw running in a southerly direction through a portion of the Tennyson land and across the road to a large ditch 108 feet south of the highway. No complaint is made by the appellant as to the kind of culvert which the appellees contemplate installing. The uncontradicted evidence is that the water from about 3 acres of the Tennyson land naturally drains through the swale to the point of the proposed installation of the culvert. Appellant's contention is that, for more than 10 years, by a system of grading and drainage adopted by the highway authorities, the water from the 3-acre area has been prevented from crossing the highway at the place of the proposed installation of the culvert, and conducted westerly by means of a grader ditch along the north side of the highway, a distance of approximately 300 feet, where it enters a box culvert there constructed in another swale or draw across the highway, and is conducted from said box culvert in a southerly direction to the large ditch, 108 feet south of the highway, which latter ditch runs nearly parallel with said road. An area of approximately 20 acres is now being drained through said box culvert (not the one in controversy). The crest of the hill of the watershed on the Tennyson farm, which drains toward the place of installation of the proposed culvert, is 541 feet from the highway, and a little over 100 feet higher than the mouth of the proposed culvert, and there is a fall of 7 27/100 feet from the outlet of the proposed culvert to the large ditch on appellant's farm.

It will be observed that the place of installation of the proposed culvert is in the natural watercourse for the drainage of the higher ground in the highway and the 3 acres of the Tennyson farm lying to the north thereof. It has been the universal holding of this court that an easement exists for the drainage of the upper land,—the upper land being the dominant estate, and the lower land the servient estate,—and that the dominant owner may, by discharging the water upon his own land into a natural watercourse, drain surface water upon the land of the servient owner, but cannot gather larger quantities of water out of the ordinary and natural course of drainage and dis-

charge the same upon the servient estate, to its substantial damage, in largely increased quantities, or at a different place or in a different manner than it would usually and ordinarily have gone in the natural course of drainage. See *Cresap v. Livingston*, 193 Iowa 488; *Kaufman v. Lenker*, 164 Iowa 689; *Jontz v. Northup*, 157 Iowa 6; *Hull v. Harker*, 130 Iowa 190. Many other authorities could be cited upon this proposition. This rule is recognized by statute in this state. See Section 7736 of the Code of 1927.

It appears that, prior to 1914, very little, if any, grading had been done upon the highway in question. At that time, the highway was graded from beyond the place of the proposed installation of the culvert in controversy and the box culvert, 300 feet to the west. In the grading of the highway, a grader ditch about two feet deep was cut on the north side of the crown thereof, and in this way, the surface water coming from the Tennyson field to the place of installation of the proposed culvert was turned west, and conducted through the grader ditch along the north side of the highway to the box culvert. The bottom of the grader ditch at the proposed culvert is about 4½ feet higher than the bottom of the box culvert. The Tennyson farm is in cultivation, and during heavy rains, the sediment coming from said farm filled the grader ditch. The highway became in poor condition, and many automobiles were stuck in the bog between the place of the installation of the proposed culvert and the aforesaid box culvert. The highway authorities have, at different times, cleaned out the grader ditch, only with the result that it again filled with dirt from the Tennyson field. They have now determined that the practical way to drain the road is by the installation of the additional proposed culvert.

The appellant, in an amendment to his petition, alleges:

"That the system of drainage hereinbefore referred to was established more than ten years prior to the filing of the original petition herein, and has been continued in force at all times, with the acquiescence and consent of the owners of all lands drained by said system or affected by said system, including Mr. Tennyson, his grantors, Wapello County, Iowa, and this plaintiff. That said system of drainage so established more than ten years ago has become a natural watercourse, which the defendants have no power to change to the damage of plaintiff."

1232

This pleading presents the sole contention of the appellant. The appellant, in his brief and argument, relies solely on *Meir v. Kroft* (Iowa), 80 N. W. 521 (not officially reported), and he contends that, by the diversion of the water which ran across the highway, prior to 1914, to the grader ditch running along the highway, where it has since run, the grader ditch became the natural watercourse, and that, since more than ten years have elapsed since said diversion of the water, the highway authorities cannot now drain the water across the highway in the natural course of drainage as formerly existed. It will be observed from the *Kroft* case that the watercourse therein involved was not the ordinary surface drainage, as in the instant case, but was a small stream of water, the source of which was a spring. We have taken the pains to examine the abstract in said case, and find that in the petition it is alleged that an oral agreement was entered into among the respective owners of the real estate and the road supervisor for the change in location of the stream of water, and the evidence introduced in behalf of the plaintiff tends to establish the allegation. In the instant case, there is no contractual agreement or arrangement, as among the respective owners of the real estate and the highway authorities, and the diversion of the surface water was made only in the ordinary working of the highway. It is apparent that the *Kroft* case is not analogous to the facts and circumstances, nor controlling in the determination, of the instant case.

In subsequent cases, we have consistently held that the statute of limitations cannot be urged or claimed against the public. Two of the cases are *Brightman v. Hetzel*, 183 Iowa 385, and *Quinn v. Baage*, 138 Iowa 426. In the *Brightman* case we declared:

"The rule that an artificial ditch may, under some circumstances, become a natural watercourse by the lapse of time, as between private individuals, does not apply when the rights of the public are involved; for neither the statute of limitations nor prescriptive right can be urged or claimed against the public."

We again quote from the *Brightman* case:

"As we have said before, the statute of limitations does not run against the exercise of governmental powers."

We there held that the improving, draining, and grading of public highways constitute the exercise of governmental power. Also, see *Wilson v. Duncan,* 74 Iowa 491; *City of Waterloo v. Union Mill Co.,* 72 Iowa 437.

Since the claimed diversion of the water along the grader ditch in 1914, the appellant has in no way changed or improved his farm to the south of the opening of the proposed culvert, so as to constitute an estoppel against the right of the highway authorities to place a culvert in the natural watercourse. See *Quinn v. Baage,* supra; *Bidwell v. McCuen,* 183 Iowa 633. The situation of the appellant after the installation of the proposed culvert will be the same as it would have been if the drainage had never been diverted along the grader ditch.

It is undisputed that the location of the proposed culvert is in the course of drainage provided by nature, and under the facts of this case, the highway authorities are clearly acting within their rights.

For the foregoing reasons, the action of the trial court in dismissing appellant's petition is clearly right, and the same is hereby affirmed.—*Affirmed.*

ALBERT, C. J., and STEVENS, DE GRAFF, and MORLING, JJ., concur.