JAMES JACOBSON, Appellant, v. E. S. CAMDEN et al., Appellees.

No. 46767.

NOVEMBER 13, 1945.

Lee & Anderson, of Estherville, for appellant.

F. E. Rosendahl, of Estherville, for E. S. Camden, Nels Osher, and Irving Ellerston, appellees.

Wm. S. Johnston and James J. Johnston, both of Estherville, for Andrew C. Jacobson, appellee.

GARFIELD, J.— ▇ Since 1901 plaintiff, James Jacobson. has owned the Northeast Quarter of a certain Section 31 in Emmet county. Since 1912 his brother, A. C. Jacobson, has owned the South Half of the Southeast Quarter of Section 30, north of plaintiff's farm. Between the two farms is a county secondary road established about 1885.

Plaintiff claims the natural course of drainage from the north thirty acres of his northwest forty and a three-acre strip

off the west side of his northeast forty is to the north onto the land of A. C. Jacobson. This action was brought in September 1944, against the county supervisors and A. C. Jacobson, claiming that by work done on the road and digging a ditch along the south side thereof the supervisors unlawfully obstructed this natural drainage and diverted the surface water onto the northeast portion of plaintiff's farm.

Following trial plaintiff was denied injunctive relief but was awarded damages of $50 and costs, half to be paid by the supervisors and half by A. C. Jacobson. The court concluded that plaintiff had lost about two acres of crop in his northeast corner because the ditch was dug along the road in 1940, and allowed damages of $10 per year for five years. Plaintiff had not asked for damages, although there was a prayer for general equitable relief. Plaintiff's appeal presents quite largely fact questions. The controlling legal principles have been frequently announced.

Section 4644.44, Code, 1939, provides that those in charge of highway construction and maintenance shall not "turn the natural drainage of the surface water to the injury of adjoining owners; but it shall be their duty to use strict diligence in draining the surface water from the public road in its natural channel, and to this end they may enter upon the adjoining lands for the purpose of removing obstructions from such natural channel that impede the flow of such water."

It is the duty of highway authorities to place openings in highway grades so as to permit surface water to escape in its natural course from the higher to the lower lands. And a servient landowner is not entitled to have the ditches along the highway so constructed and maintained as to fully protect his lands from surface water naturally flowing thereover or to change the natural course of drainage. Pate v. Rogers, 193 Iowa 726, 731, 732, 187 N. W. 451. Injunction will lie to restrain highway officials from so improving a highway as to divert water from its course of natural drainage and cause it to flow upon a plaintiff's land in an unusual and unnatural manner. Estes v. Anderson, 204 Iowa 288, 213 N. W. 566. See, also, Anton v. Stanke, 217 Iowa 166, 251 N. W. 153, and cases there cited.

978

■ Defendants say in argument that the question for determination is whether plaintiff is entitled to injunctive relief and that he can be entitled thereto only if defendants have wrongfully diverted surface water onto plaintiff's premises to his substantial damage. Plaintiff agrees to this statement of the question presented.

We first consider plaintiff's claim that the thirty-three acres in the northwest part of his farm naturally drain to the north onto his brother's land. Plaintiff concedes the land to the south of the thirty-three acres drains to the south and southeast. Along the east side of the thirty-three acres is a natural ridge extending south from the highway about sixty rods. West of this ridge is a draw also extending about sixty rods to the south and somewhat southwest. Just south of the road the ridge is about twenty feet higher than the draw immediately to the west. This draw slopes definitely downward to the north —its south end is some forty feet higher than its north end, at the road. Just west of this draw is another ridge which extends from the road slightly west of south. And west of this second ridge is a second draw extending about sixty rods to the south and southwest. This second draw also has a distinct fall from south to north—the south end is about twenty-seven feet higher than the north end, at the road. West of the second draw is a third ridge which extends south and west from the highway. West and north of this third ridge is a low place of two and a half to three acres in the northwest corner of plaintiff's farm. This small area, however, has tile drainage and is not involved in this controversy.

Almost directly north from the second ridge is a lane leading from the highway straight north to the buildings on A. C. Jacobson's farm. A natural creek enters the A. C. Jacobson farm from the west and crosses the lane about forty rods north of the highway (i.e., about in the middle of the eighty, north and south). From the lane this creek runs somewhat north of east for about thirty rods and then turns to the northeast and leaves the A. C. Jacobson farm slightly west of the center of the north line of his east forty acres. A. C. Jacobson had installed a thirty-six-inch covered tile drain in this creek from the place where it crosses his lane to the point

where it leaves the north line of his east forty. Plaintiff claims, and we think the evidence clearly establishes, that the natural course of drainage of the surface water from the two large draws on plaintiff's thirty-three acres is north to this creek on his brother's farm.

Plaintiff offered in evidence a plat of his north eighty and the A. C. Jacobson eighty, prepared by J. A. Rowat, Emmet county engineer, from a survey made by him. Mr. Rowat is a college graduate in engineering with thirty-six-years' experience in drainage work. Defendants conceded his qualifications. This plat shows numerous elevations of the area in controversy and is much the most reliable evidence before us on this subject. See Priest v. Maxwell, 127 Iowa 744, 747, 104 N. W. 344.

The Rowat plat shows a fall of twenty-eight feet from the low point of the second draw on plaintiff's land, just south of the highway, north to the place where the creek crosses the A. C. Jacobson lane about forty rods north of the highway. There is a fall of fourteen feet from the low point of the first or east draw on plaintiff's farm, just south of the highway, north and somewhat northeast to the creek at about the center of A. C. Jacobson's farm. The ground between the north end of these two draws, just south of the road, and the creek to the north slopes gradually downward. Furthermore, the elevation of the two east ridges is such as to make it impossible that the natural course of drainage from these two draws is to the east and south as defendants alleged in their answers.

Rowat testified for plaintiff. No reason is suggested why he should not be fair to defendants. He said:

"Q. Can any of the water coming on the northwest forty of plaintiff's land flow to the east at any point across the [first or east] ridge AB? A. Only in the road ditch. * * * Based upon my measurements and the levels and elevations I took, the course of natural drainage of water on the northwest forty acres of plaintiff's land is northerly and northeasterly. * * * If that ridge were not cut down and the road put through there in the way it is, no water.could flow east past that ridge at the location of the public highway. * * * Q. *Where would*

*that water finally go?* A. *Into the creek which is near the center of the* * * * *A. C. Jacobson land* * * * It was into that ditch that the water from the northwest forty of plaintiff's land naturally drained and found its way. Q. And would that also be true of the quarter to the west of the [east] ridge AB as it flowed northeast across the road? A. Yes, sir."

There is much other testimony to the same effect from Mr. Rowat and other witnesses. We have no doubt of the truth of this evidence.

As stated, defendants alleged in their answers that the natural course of drainage from plaintiff's thirty-three acres in controversy (except the three acres in the northwest corner) is to the east and southeast. There is no evidence to support these allegations except that given by A. C. Jacobson himself, which is clearly contrary to the physical facts and inherently incredible. See Priest v. Maxwell, supra, 127 Iowa 744, 747, 104 N. W. 344.

A. C. Jacobson testified repeatedly upon questioning by his own attorney that no water ever flowed to the north from the northwest portion of plaintiff's land. Finally, after being cross-examined by his own counsel, and in response to leading questions, he said the natural course of drainage from plaintiff's thirty-three acres was northeast onto the witness' land and then in a circular course to the southeast, back onto the northeast portion of plaintiff's land. This is the principal contention made by defendants on this branch of the case. But we think the claim is not supported by the evidence. After the testimony given by A. C. Jacobson in answer to leading questions, he repeated on cross-examination his incredible story that the water from plaintiff's land in controversy never did come onto his farm but always went east.

Aside from the testimony of A. C. Jacobson, which is entitled to little weight, principal support for the claim that the natural course of drainage ultimately carried the water from plaintiff's northwest thirty-three acres back onto plaintiff's northeast forty comes from the engineer Boggess. His testimony, however, is not nearly so convincing as Rowat's. He made no survey, took no elevations, and prepared no plat, but

undertook to testify principally from observation. Then, too, Boggess' testimony was somewhat weakened on cross-examination when he said:

"The water naturally drains northeast across the location of the highway to the north and onto the land of A. C. Jacobson. The elevations do not show that the water from that draw before there was any obstruction in the highway and before there was a ditch cut in the highway, did not find its way north and northeast into the open ditch on the A. C. Jacobson land."

The trial court did not find that the natural drainage from the northwest part of plaintiff's land was in such a circular course as defendants contend. On the contrary, at least inferentially, it found that the course of drainage was as plaintiff contends and the award of damages is explainable only on such theory.

It does appear that the southeast corner of the A. C. Jacobson land (there is a schoolhouse at this corner) and the northeast corner of plaintiff's farm are both very low. The natural course of drainage from some two to three acres in A. C. Jacobson's southeast corner probably is south onto plaintiff's northeast corner. However, it is our conclusion, as testified by Mr. Rowat, that most of the water from the low ground on A. C. Jacobson's east forty drains to the east and not south onto plaintiff's land.

We next consider whether defendants have wrongfully diverted the water from plaintiff's thirty-three acres in question, to his substantial damage. We think there was such diversion and damage.

In August 1940, the supervisors raised the surface of the public highway and, for the first time, dug an open ditch along its south side from a place west of the east ridge to and beyond plaintiff's northeast corner. In so doing, the two east ridges were cut down. Originally both ridges extended to the north of the highway. Now the elevation of the east ridge just south of the highway is eighteen feet higher than the road surface at that point. This ridge was cut down so that it back-sloped gradually to its natural elevation south of the highway. The dirt that was excavated from the ridges was used to raise the

surface of the road. The grade through the east ridge is about four feet high and farther west, north of the draws, about six feet high.

While there was no open ditch along the south side of the road before 1940, there was a fourteen-inch tile from a point a few rods west of the east ridge, along the south side of the road, to a point some fifteen or more rods east of that ridge. This tile was installed, so plaintiff says (and he is not contradicted), without his knowledge or consent while he was living in North Dakota from 1906 to 1912. This fourteen-inch tile was destroyed when the open ditch was dug in 1940. The ditch is somewhat deeper than the bottom of the fourteen-inch tile.

Some few years before the road was regraded in 1940 (A. C. Jacobson says about fifteen years ago) the supervisors or county engineer installed a ten-inch culvert across the roadbed north of the first draw, somewhat west of the upper end of the fourteen-inch tile. Sometime before this ten-inch culvert was installed there had been a wooden culvert at about that location. The open ditch is deeper than this ten-inch culvert, which was partially destroyed by the grading in 1940. Finally, in July 1944, A. C. Jacobson, with the consent of one of the supervisors, filled this culvert with concrete so that no water could go through it. Although denied by A. C. Jacobson, we think the fact is that many years ago there was a wooden culvert across the road about north of the low point of the second draw, somewhat west of the lane leading to A. C. Jacobson's buildings. This culvert had disappeared some years before 1940.

As intimated, there are no openings in the roadbed to permit the surface water from plaintiff's thirty-three acres to escape in the natural course of drainage. Plaintiff objected to the action of the supervisors in regrading the road without leaving openings to permit the escape of water from these draws and in digging the ditch through the east ridge. (Rowat, to whom we have referred, was not county engineer in 1940.) That the road served as a dam for the water from these draws is shown by the fact that in 1943 a portion of the grade and ditch was washed out and the supervisors placed in the ditch along the south side of the road steel baffles to prevent such washouts.

There is more fall to the open ditch along the west third of plaintiff's northeast forty than along the east two thirds where the land is more flat and low. As one supervisor testified, the water "comes pretty fast" through the cut in the east ridge. Where the grade of the ditch decreases, and on east, it has become partially filled with silt. As a result, the water that comes from the west of the first ridge overflows the ditch and spreads out over part of plaintiff's northeast forty. Since 1940 water has stood on about four acres in that forty so that crops could not be grown on that land. This is about twice the area that was too wet before that time.

While the road and the fourteen-inch tile doubtless caused some diversion of water from the thirty-three acres in question prior to 1940, it is clear that such diversion was materially increased in 1940 when the road grade was raised without leaving any openings in it, the ridges were cut down and the open ditch **was dug.**

We think there is sufficient showing of damage to plaintiff from the wrongful diversion of this water. The annual loss of crops from the land covered with water, at least in part caused by such diversion, is a substantial damage.

If the issue had been raised, it may be plaintiff should be held to have acquiesced in conditions as they existed just prior to 1940. However, no issue of acquiescence, adverse user, prescriptive right, or the statute of limitations has been raised. But in any event, there can be no claim that plaintiff has acquiesced in conditions since 1940. In fact, he has consistently objected thereto.

Defendants suggest that if openings are installed in the roadway the water from plaintiff's draws will be carried onto the land of A. C. Jacobson in such greatly increased manner and unnatural quantities as to cause substantial injury to the servient owner. This contention cannot be sustained. Plaintiff has a right to drain the natural depressions or "drainways" on his land onto the lower land of his brother in the natural course of drainage. Installing these openings in the highway will not greatly increase the quantity of water that went onto A. C. Jacobson's land in the natural course of drain

age, nor will such water be carried to a different place or in a substantially different manner. See section 7736, Code, 1939; Herman v. Drew, 216 Iowa 315, 249 N. W. 277; Hinkle v. Chicago, R. I. & P. R. Co., 208 Iowa 1366, 1370, 227 N. W. 419, and cases cited; Schwartz v. Wapello County, 208 Iowa 1229, 227 N. W. 91, and cases cited; Lessenger v. City of Harlan, 184 Iowa 172, 168 N. W. 803, 5 A. L. R. 1523, and annotation 1530; Hayes v. Oyer, 164 Iowa 697, 700, 146 N. W. 857. These authorities, together with those cited earlier in this opinion, fully support plaintiff's right to equitable relief.

We think it is the supervisors' duty to install suitable openings in the roadbed to permit the surface water from the northwest thirty-three acres of plaintiff's farm to drain to the north in its natural course through and across the highway and that defendant A. C. Jacobson should be enjoined from interfering with the flowage through such openings. In our opinion an opening in the grade as large as twenty-four inches in diameter should be installed at or near the low point in the east draw (the point designated H on the plat Exhibit F), and a similar opening at or near the low point in the second draw (the point marked I on said plat).

Insofar as the above relief was denied, the judgment and decree is reversed and the cause is remanded for a decree in harmony with this opinion. If the parties are unable to agree on the terms of such decree, the trial court may, at the request of any party or on its own motion, hear evidence to aid it in fixing the terms of such decree, particularly as to the character and exact location of the openings to be installed in the highway and the time within which the work is to be done.—Reversed and remanded.

All JUSTICES concur.