Roy O. Wheatley et al., Appellants, v. Cass County et al., Appellees; Earl Rogler et al., Intervenors, Appellees.

No. 47193.

(Reported in 31 N. W. 2d 871)

APRIL 6, 1948.

REHEARING DENIED JUNE 17, 1948.

Jones, Cambridge & Carl, of Atlantic, for appellants.

Don Savery and John E. Budd, both of Atlantic, for defendants-appellees.

E. S. Holton, of Atlantic, for Earl Rogler and Frank J. Grulke, intervenors-appellees.

Charles E. Walker, of Anita, for Jessie E. Wheeler, intervenor-appellee.

HAYS, J.—Highway K, in Benton Township, Cass County, Iowa, extends north and south across Troublesome Creek Valley. On the east side and adjacent to said highway is located the land of Jessie Wheeler, Frank J. Grulke and Carl Rogler, extending from the north to the south, in the order named. To the west of highway K, and adjacent thereto, is part of the land of plaintiff Roy O. Wheatley, while to the south and west of the Wheatley land is the land of plaintiff Henry W. Hansen. The natural flow of the surface water is from the northeast to the southwest. Prior to 1937 the same crossed this highway through several openings in the grade, and in flood time it flowed over and across the highway, and over and across the land of the plaintiffs.

In 1937 the supervisors of Cass County raised the grade on highway K, closing the old openings therein. About 400 feet south of the old channel of Troublesome Creek where it crossed highway K with the flow being from the east to the west, a new channel for the creek was made, which extended from the old channel on the Rogler land, southwest across the highway to again meet the old channel on the Wheatley land.

At the place where the new channel of the creek crosses the highway a new steel bridge 100 feet long was built across this new opening in the grade. In building the new grade, and to enable the County to make a ditch along the east side of the highway toward the south and into the new channel of Troublesome Creek, each of the intervenors granted an easement to the County over an additional strip of their land along the east side of the grade.

The watershed of Troublesome Creek and Crooked Creek, which enters it at the south on the Rogler land, includes about 65,920 acres with the point of convergence being at the bridge across the highway.

The County now proposes to construct a culvert across the highway at the location of the old channel crossing and it is to prevent this construction that an injunction is prayed. The trial court denied the injunction and directed the County to proceed with the work. From a judgment accordingly, the plaintiffs appeal.

The following plat shows the general situation.

While appellants have submitted seven propositions as a basis for reversal, but one question is involved, i. e., equitable estoppel of appellees to now change the flow of water. Appellants say that after 1937, when the present grade and drainage along highway K were established, they, or at least Wheatley, purchased their land. That in reliance upon that grade valuable improvements have been made thereon which will be destroyed, unless appellees are denied the right to make the proposed changes.

Appellants frankly state that their case is brought in reliance upon certain statements made by this court in the case of Schwartz v. Wapello County, 208 Iowa 1229, 1233, 227 N. W. 91, 93. The question there involved was very similar to the instant one. Injunctive relief was denied but the opinion contains the following statement:

"Since the claimed diversion of the water along the grader ditch in 1914, the appellant has no way changed or improved his farm to the south of the opening of the proposed culvert, so as to constitute an estoppel against the right of the highway

authorities to place a culvert in the natural watercourse. * * * . The situation of the appellant after the installation of the proposed culvert will be the same as it would have been if the drainage had never been diverted along the grader ditch."

The basic principles governing the question of surface water, together with the duties of the highway authorities toward the public, are not in serious dispute. All parties are agreed that appellants' land is servient estate. They recognize the rule announced in the Schwartz case, supra, at page 1230 of 208 Iowa, page 92 of 227 N. W., which is as follows:

"It has been the universal holding of this court that an easement exists for the drainage of the upper land—the upper land being the dominant estate, and the lower land the servient estate—and that the dominant owner may, by discharging the water upon his own land into a natural watercourse, drain surface water upon the land of the servient owner, but cannot gather larger quantities of water out of the ordinary and natural course of drainage and discharge the same upon the servient estate, to its substantial damage, in largely increased quantities, or at a different place or in a different manner than it would usually and ordinarily have gone in the natural course of drainage."

They also recognize the rule announced in Brightman v. Hetzel, 183 Iowa 385, 395, 167 N. W. 89, 92, as follows:

"The rule that an artificial ditch may, under some circumstances, become a natural watercourse by the lapse of time, as between private individuals, does not apply when the rights of the public are involved; for neither the statute of limitations nor prescriptive right can be urged or claimed against the public."

See, also, section 309.44, Code of 1946; Jacobson v. Camden, 236 Iowa 976, 20 N. W. 2d 407.

Equitable estoppel, relied upon by appellants, has been before us on many occasions. In Anfenson v. Banks, 180 Iowa 1066, 1092, 163 N. W. 608, 616, L. R. A. 1918D, 482, we said:

"For the application of that doctrine (equitable estoppel)

there must generally be some intended deception in the conduct or declarations of the party to be estopped, or such gross negligence on his part as to amount to constructive fraud, by which another has been misled to his injury." Citing Brant v. Virginia Coal & Iron Co., 93 U. S. 326, 23 L. Ed. 927.

In Garretson v. Equitable Mut. L. & E. Assn., 93 Iowa 402, 411, 61 N. W. 952, 955, it is said:

"The doctrine of estoppel in pais is based upon a fraudulent purpose or fraudulent result. If the element of fraud is wanting, there is no estoppel, as where both parties were equally cognizant of the facts, and the declarations or silence of the one party produced no change in the conduct of the other. There must be deception and change of conduct in consequence."

See, also, Wishard v. McNeill, 85 Iowa 474, 52 N. W. 484.

The estoppel here urged against the County is because the new grade was made by it, and against intervenors because they consented to the same and gave easements to the County to facilitate the work. As above stated, there must be both deception and change of conduct, if there is to be an equitable estoppel.

Assuming, but not holding, that there exists deception upon the part of the appellees, what does the record show as to a change of conduct upon the part of the appellants? Prior to 1937 appellants' land received the surface water from the north and east. That part of it in the vicinity of both the old and new channel of Troublesome Creek was pasture only. By the grading of highway K and the building of a ditch along the east side thereof, extending to the new channel of the creek, ordinary surface water was diverted from appellants' land. This was the situation when in 1941 appellant Wheatley purchased his land. Thereafter Wheatley made the following improvements: Along the west side of his land (about 500 feet west of highway K) he built a drainage ditch to divert water from the north and west, from crossing his land. This ditch carried the same along the west line of his land to the new channel of the creek. The expense was about $1,000. It is claimed that by this ditch considerable water is diverted from the highway K and eliminates washing out of the highway.

The County assisted Wheatley in this work by building a bridge on the local east-west road where the drainage ditch crosses the same. At the time this work was being done intervenors knew of it and made no statement to the effect that they were asking for a change in the highway K drainage. Since building the drainage ditch, Wheatley has been able to farm that portion of his farm south of the east-west road and west of highway K, where before it was only available for pasture. Thus it is claimed the proposed culvert will destroy its use as tillable land.

Appellant Hansen's land is southwest of Troublesome Creek bridge and about 80 rods west of highway K. He joins Wheatley on the south. Troublesome Creek crosses his farm about 40 rods south of the north line and does not enter his farm from the Wheatley land. The land along the creek that used to be overflow land, he has tiled with outlet in Troublesome Creek, the work being done in 1929. It is his claim that by constructing the new culvert, water would be allowed to cross over the Wheatley land and thence onto his land, placing an additional burden on his tile. It is apparent that whatever improvements have been made by Hansen were made prior to the construction on highway K, in 1937. At that time, the surface water went in the same place as it will tend to go, under the proposed construction.

As to appellant Wheatley—his claimed damage is the building of the drainage ditch along his west line, in reliance upon the grade of highway K as established in 1937. An examination of the plats offered in evidence shows that there is considerable surface water coming onto the Wheatley land from the north and west. Until the drainage ditch was built, this water crossed his land onto the highway K. By the building of the ditch, this water is diverted irrespective of what changes may be made in highway K.

Appellants have the burden of showing that material damage will result to them by the changing of the grade. In this, they fall far short. Even assuming that the construction of the drainage ditch by Wheatley was done in reliance upon the then grade of highway K, the ditch will still do all that it ever did, after the proposed change. It diverted water from

the north and west, and it will still do the same. As to the Hansen land, it is not claimed that any improvement has been made thereon since 1937, thus there was no reliance upon the grade made at that time. The construction of the proposed culvert will merely place Hansen in the same position he was prior to the new grade in 1937.

It is conceded that it is the duty of the highway authorities not to "turn the natural drainage of the surface water to the injury of adjoining owners." It is also well established that a servient landowner is not entitled to have the ditches along a highway so constructed as to fully protect his lands from surface water naturally flowing thereover or to change the natural course of drainage. Pate v. Rogers, 193 Iowa 726, 187 N. W. 451. See, also, Nixon v. Welch, 238 Iowa 34, 24 N. W. 2d 476, 479, 169 A. L. R. 1141. The fact that for several years after the construction of the new channel the same was sufficient to carry the surface water from the north and east does not mean, should later developments make a change necessary, that the authorities are estopped from acting. Appellants cite many cases of drainage work by individuals on adjoining farms, but these cases lack the element of public interest involved here. They are not applicable.

The trial court found that no duty rested upon appellees to advise appellants that highway K might be changed; it also found that appellants had failed to establish material damage to them by the proposed change, and with this we agree. The situation is exactly as stated in the Schwartz case, supra:

"The situation of the appellant after the installation of the proposed culvert will be the same as it would have been if the drainage had never been diverted along the grader ditch."

Finding no error, the judgment of the trial court is affirmed. —Affirmed.

MULRONEY, C. J., and OLIVER, BLISS, HALE, GARFIELD, MANTZ, and SMITH, JJ., concur.