Robert E. Owens, et al., appellees, v. Fayette County et al., appellants.

No. 47519.

(Reported in 40 N.W.2d 602)

January 10, 1950.

Rehearing Denied May 5, 1950.

E. S. Estey, County Attorney, and R. F. Estey, of West Union, for appellant Fayette County.

E. B. Shaw, of Oelwein, for appellants Fred Gremmels, Robert Wilson and A. E. Smith, supervisors of Fayette County.

Geiser, Donohue & Wilkins, of New Hampton, for appellees.

WENNERSTRUM, J.—Plaintiffs sought an injunction and damages for claimed wrongful concentration of water flowing from dominant lands to the east and south of their property with resulting damage to their land. The trial court enjoined defendants from causing damage to plaintiffs' lands and ordered the removal of culverts and dams placed in the highway but denied damages. Plaintiffs have not appealed from decree dismissing the claim for damages. Defendants have appealed from decree of injunction against them.

Appellees own a 320-acre farm north and west of the intersection of north-and-south and east-and-west secondary roads. It is servient as to drainage to the land east of the north-and-south road and south of the east-and-west road. Prior to 1944 the east-and-west road to the west of the intersection was low and when there was heavy rainfall the drainage from the lands south of this road overflowed the highway and in part drained to the west along the road and to a greater extent drained to the north onto appellees' land in the natural course of drainage. The east-and-west road west of the intersection, as well as appellees' land, as shown by the topographical map introduced in evidence, slopes to the west. It is not questioned, however, that appellees' land is servient in the matter of drainage to the land east and south of it.

During 1944 the defendant-county raised the grade of the east-and-west highway to the west of the intersection for an approximate distance of 500 feet and for 200 to 300 feet east of it. The grade on the north-and-south road was also raised for approximately 100 feet north of the intersection. At a point 180 feet west of the center of the intersection a new concrete culvert was installed in the raised grade of the east-and-west road. Previously one had not been there. At a point approximately 31 feet west of this north-and-south culvert ditch blocks or dams were placed across the road ditches on both sides of the grade to stop or retard the water from going farther west. The county engineer of Fayette County, testifying for appel-

lants, stated: "These road blocks were put in at the natural grade elevation that existed before there was any highway there." There was no evidence presented by this witness as to what was the natural grade elevation except as it may be inferred from an examination of the contour or topographical map. It may properly be concluded that these blocks or dams were raised to the top of the ditch along both sides of the road and to the level of the Owens land to the north. In referring to the contour map the county engineer, on cross-examination, further testified:

"May I explain that these contours represent the original ground elevation and from what has been said here of the map it may have been that this area in this road here in the southeast corner was extremely low prior to the time that this road improvement was made. It was low enough so that the water ran to the west along the road and down the road, over the road so that from the time this ground was in its natural condition up to the time that this road improvement was made, changes took place in these elevations that I am unable to tell you what they were, other than to assume that it was lower. The natural ground elevation sloped downhill to the West from the intersection. Water could run down that roadway now if it did not go off into the ditches. I think water from the road could go all the way down there from its present elevation although I wouldn't say."

In the north-and-south road a new 48-inch circular concrete culvert was placed in line with the ditch on the north side of the east-and-west road. Apparently there had been a smaller culvert at or near this point.

Appellants contend the natural course of the waterflow is from southeast to northwest across the Owens land. They maintain they have the right to collect the water from the dominant land east of the north-and-south road and south and east of the culvert in the east-and-west road and have it flow through this culvert onto the Owens land in its natural course.

It is the claim of the appellees that at the time of the trial there had developed well-defined ditches across their land which varied in width from 4 to 16 feet and from 2 to 6 feet in depth.

They further maintain that the dams placed in the ditches and the north-and-south culvert in the east-and-west road resulted in forcing an unusual amount of water out of the north outlet of the culvert which produced the ditches on their land. It is also contended that appellants' employees in order to facilitate the flow of the water cut a ditch on appellees' land in line with the north outlet of the culvert. As to the cutting of this ditch the former county engineer, in charge of construction in 1944, testified on cross-examination:

"Q. The waters never formerly had been concentrated at that point, had they? A. Hadn't been concentrated at any point in that area. Q. So the only water prior to that time that could run onto the plaintiffs' land in the southeast corner to 170 feet west would be the water that got beyond 3 feet in depth. Then it ran over the grade, isn't that correct? A. Well, it wouldn't have to be only about a foot deep or a few inches. There wasn't any grade and the ditches were filled. Q. Then after you excavated the ditches the water would have to rise at least 3 or 4 feet before it could run over, would it not, in the north ditch? A. If there were no opening for an outlet. Q. There is no question, is there, Mr. Finch, that you have concentrated the waters at Point 13 [location of north-and-south culvert in east-and-west road] from both culverts? A. That was our intention. Q. And would that be to provide a new outlet? A. That is right. Q. At the time you did that you did not anticipate possibly the damage that has resulted, isn't that correct? A. Well, we were not required to anticipate damage at a remote distance from this point and there could be very little damage there, Mr. Donohue, because of the amount of right-of-way involved was so very small. Q. You admit that there has been damage resulting, do you not? A. At this point? Q. But there has been damage caused by the water? A. There has been damage caused by the water before but the county is not responsible for the amount of water. Q. And you do admit that the water coming on there at Point 13 has caused damage to plaintiffs' land? A. It has caused damage but that does not concern us. Q. Your attitude is that you are not concerned? A. That is right. In a way we are concerned about it but we aren't responsible for it and we cannot assume any

responsibility. We do not go out deliberately and do damage to anyone's land. It is up to the owners of the land to protect themselves—in some cases, to loan the machines and labor required. It is up to them to assume that responsibility."

The law involved in this appeal is well-settled and the main question presented to us is the application of it to the facts. Section 309.44, Code 1946, reads in part as follows:

"Officers, employees, and contractors in charge of said construction and maintenance work shall not * * * turn the natural drainage of the surface water to the injury of adjoining owners; but it shall be their duty to use strict diligence in draining the surface water from the public road in its natural channel, and to this end they may enter upon the adjoining lands for the purpose of removing obstructions from such natural channel that impede the flow of such water."

It is appellants' contention that what was done was to carry out the provisions of this statute.

It is the often repeated holding of this court that it is the duty of highway authorities to place openings in highway grades so as to permit surface water to escape in its natural course from the higher to the lower lands. Jacobson v. Camden, 236 Iowa 976, 977, 20 N.W.2d 407.

However, in the improvement of the highways and the drainage of water from the dominant to the servient land it has been held that an injunction will lie to restrain highway officials from so improving a highway as to divert water from its course of natural drainage and cause it to flow upon appellees' land in an unusual and unnatural manner. Jacobson v. Camden, supra, citing Estes v. Anderson, 204 Iowa 288, 213 N.W. 566; Anton v. Stanke, 217 Iowa 166, 251 N.W. 153.

In the case of Schwartz v. Wapello County, 208 Iowa 1229, 1230, 1231, 227 N.W. 91, 92, it is stated:

"It has been the universal holding of this court that an easement exists for the drainage of the upper land,—the upper land being the dominant estate, and the lower land the servient estate,—and that the dominant owner may, by discharging the water upon his own land into a natural watercourse, drain sur-

face water upon the land of the servient owner, but cannot gather larger quantities of water out of the ordinary and natural course of drainage and discharge the same upon the servient estate, to its substantial damage, *in largely increased quantities, or at a different place or in a different manner than it would usually and ordinarily have gone in the natural course of drainage.* [Citing cases.]" (Italics supplied.)

It is our conclusion the culvert in the north-and-south road was properly placed in the natural course of drainage from the land to the east and should not be removed. It is in line with the north road ditch along the east-and-west road and merely carries the water in that ditch. The water that had previously drained from the area to the east had gone through a smaller culvert at about the same place in the north-and-south road, flowed along the north side of the road and at times on the old road to the west and in part over appellees' land. According to the topography and elevations the water undoubtedly originally flowed onto the Owens land at about its southeast corner.

We conclude the culvert in the east-and-west road also should not be removed. It is at about the lowest part of this road before it was improved and in approximately the natural course of drainage. Under our statute, section 309.44, 1946 Code, supra, the highway authorities have the "duty to use strict diligence in draining the surface water from the public road in its natural channel." That is what the county officials did in putting in the culvert in the east-and-west road. Our decisions support this action. See Jacobson v. Camden, supra, 236 Iowa 976, 20 N.W.2d 407, and citations.

We consider now the placing of the ditch blocks. The engineers who testified for the appellants said the culverts and ditch blocks merely restored the flow of the water to the course of its natural drainage.

Raymond A. Zack, district engineer for the state highway commission, stated: "I haven't seen the figures or elevations on the top of the road blocks but as I remember seeing them today they are at about the elevation of the land next to the road, on either side."

Roy Braun, an engineer for the highway commission, stated: "The road block or dike on the south side of the road is the same as the ground on the south side of the road and the one on the north side is as near as it could be made because it runs from the shoulder of the road to the natural ground elevation at the fence line."

The present county engineer testified: "No additional surface water now flows over the Owens land that did not flow prior to the construction of any roadway. On the contrary it is a bit less."

Both the present county engineer and the former engineer said and the topographical map clearly shows that any water which ran down the highway prior to the 1944 improvement had been diverted there by construction of the road and the effect of the culverts and ditch blocks was merely to restore the water to its natural course across appellees' land.

We are satisfied the facts are as testified to by these engineers and as shown by the map. No engineer testified for appellees as part of their main case and the one used in rebuttal, who had taken no elevations and made no survey, admitted on cross-examination:

"I wouldn't say that any water has been diverted through this north-and-south culvert in the east-and-west road, that didn't flow into a natural watercourse that passes within a short distance of this point before there was any road improvement or any culvert out there. * * * Probably all of the water that flows through this north-and-south culvert formerly flowed across the Owens land at approximately the southeast corner of it when it was in its natural condition before there was any road. * * * There is a possibility that some of the water that would naturally flow on the Owens farm is still being diverted by the ditches along the east-and-west road and kept off the Owens farm."

We think appellants had the right to restore the water to its natural course across appellees' land by means of the culverts and ditch blocks and that no rights of appellees were thereby invaded. Anton v. Stanke, 217 Iowa 166, 251 N.W. 153, and the authorities there cited hold that water should be caused to

flow in its natural course of drainage. This is also the holding in Schwartz v. Wapello County, supra, 208 Iowa 1229, 227 N.W. 91, and the quoted portion of this case heretofore set out is applicable here. See also Droegmiller v. Olson, 241 Iowa 456, 40 N.W.2d 292, and citations.

To facilitate the flow of water from the north outlet of the culvert in the east-and-west road appellants' employees made a ditch opening from the north highway ditch into appellees' land at the fence line. We do not believe this particular action was justified. We do not think section 309.44, Code of 1946, which provides that officers, employees, "* * * may enter upon the adjoining lands for the purpose of removing obstructions from such natural channel that impede the flow of such water" authorized the digging of this ditch into the Owens land.

It is our holding that the culverts and ditch blocks should not be removed since they merely provide for drainage in its natural course. However, the ditch cut into appellees' land should be filled. The case is reversed and remanded for a decree in keeping with this opinion. Costs will be taxed one fourth to appellants and three fourths to appellees.—Reversed and remanded.

BLISS, C. J., and HALE, GARFIELD, HAYS, MANTZ, OLIVER, and SMITH, JJ., concur.