## King v. The Chicago, Burlington & Quincy R'y Co.

1. **Surface Water**: DIVERSION BY MEANS OF A DITCH: ESTOPPEL TO TURN AGAIN INTO NATURAL COURSE. The defendant, in building its railroad, spanned with a trestle a slough, along which surface water flowed, under the trestle, upon plaintiff's land below. Afterwards defendant filled the space covered by the trestle, making a solid embankment, and cut a channel along its embankment to carry the water to the river. The diversion of the water was beneficial to plaintiff. But the channel proved inadequate, and caused some of the adjacent lands to be overflowed, and the abutment of defendant's bridge at the river was in danger of being undermined by the water flowing through the ditch. To avoid these results, defendant was about to construct a culvert in its embankment to allow the water to flow again in its original and natural course. The amount of the water had in the mean time been augmented by the fact that some of the land-owners above the embankment had drained their lands by ditches into the slough. Plaintiff sought to enjoin defendant from again turning the water into its natural course, on the ground that he would thereby be damaged, and that defendant was estopped from so doing on account of its having taken control of the water and directed its course in another way. But, as it does not appear that plaintiff did anything in reliance upon the permanency of the diversion of the water, or that he would, on account of anything done by defendant, be in any worse condition by its return to its natural course than he was before its diversion. *held* that there was no estoppel, and that the injunction was not warranted. BECK, J., *dissenting.*

### *Appeal from Montgomery District Court.*

### THURSDAY, OCTOBER 7, 1886.

PLAINTIFF brought this action in equity, to restrain the defendant from constructing a culvert or water-way through an embankment on which the track of its railroad is laid. He alleges that the opening of said culvert or water-way through the embankment would have the effect to throw upon his premises, which are adjacent to the railroad, a large amount of surface water, which is drained onto defendant's right of way from the land lying on the opposite side of the railroad from his farm; also to submerge and render impassable a public highway which is the thoroughfare by which

he reaches his market town. The district court entered judgment granting the relief demanded, and defendant appeals.

*Smith McPherson* and *C. E. Richards*, for appellant.

*W. S. Strawn* and *Frank M. Davis*, for appellee.

REED, J.—Defendant's railway was constructed in 1869. At the point in question it crosses a slough, or swale, through which the surface water from several hundred acres of land lying on the north side of the track found its way to the Nishnabotna river. In the original construction of the railway, this slough was spanned by a trestle, which permitted the passage through defendant's right of way of all the water which came upon it from the north through the slough. The track was maintained in this condition until 1879, when defendant filled the space covered by the trestle, making a continuous embankment which prevented the passage of the water. It also constructed a ditch on the north side of its track, through which it sought to conduct the water to the river. This ditch was not of sufficient capacity, however, to carry all of the water which came through the slough, and it caused a portion of the lands lying on the north side of the track to be overflowed. It was also found that the abutment of defendant's bridge over the river was in danger of being undermined by the water which flowed through the ditch. The owner of the land which was overflowed by the water from the ditch brought suit against defendant to recover the damages caused thereby, and, in compromise of that suit, defendant agreed that it would either enlarge the ditch, or reopen the passage-way for the water through the embankment. It elected to take the latter course, and was proceeding to open a water-way through the embankment when this suit was instituted.

Between the time of the construction of the railroad and the closing of the water-way, in 1879, there had been a

material increase in the amount of water which flowed through the slough, caused by ditches which had been constructed by the owners of some of the land which drained into the slough, for the reclamation or improvement of their lands. And during the time the water-way was closed there had also been an increase in the amount of water in the slough, resulting from like causes. Plaintiff's land is south of the track. It does not abut on defendant's right of way, but, if the water-way through the embankment should be opened, the water which will flow through it, after passing over the intervening land, will enter upon his premises, and overflow and render unfit for cultivation a portion of his land. It will also overflow, and at times render impassable, a highway which affords plaintiff the most convenient way of access to the town at which he trades.

The question which arises upon the facts is whether defendant is bound to maintain the embankment in such condition as to protect plaintiff's premises and said highway from the water which comes upon its right of way through said slough. It has not been claimed that defendant originally owed plaintiff any duty in that respect. Before its railroad was constructed, the water naturally flowed through the slough, and found its way onto plaintiff's premises, and at times portions of his land and the highway were overflowed by it. Very clearly plaintiff had no right originally to demand that the embankment should be so constructed and maintained as to form a protection to his premises against the water. The position urged by counsel, however, is that, when defendant assumed to take charge of the water, and undertook to conduct it to the river through another channel, it relinquished all right to have it conducted away from its premises by the natural channel, and, as the reopening of the water-way through the embankment would work an injury to the lower estate, it is now estopped from opening it.

But it is very clear, we think, that plaintiff is not entitled

to recover on the ground that defendant is estopped by its previous acts from opening the water-way. What was done by defendant had the appearance, it is true, of being a permanent work. But it is an essential element of an estoppel *in pais* that the one pleading it, or those under whom he claims, should have relied on the act or representation alleged, and been induced by it to alter his position with reference to the subject to which it related. 2 Pars. Cont. 703; *Lucas v. Hart*, 5 Iowa, 415.

It is not claimed, however, that plaintiff did anything in reliance on the permanency of the work done by defendant. The closing of the water-way had the effect to render arable the portions of his land which before that were subject to overflow, and he cultivated them. He simply availed himself of such benefits as resulted from the act done by defendant, but he did nothing himself which contributed to the result. If the water-way should be opened, he would be placed in precisely the same position he would have occupied if it had never been closed. This essential element of an estoppel is clearly wanting in the case. When defendant constructed its embankment, it had the undoubted right to leave a way for the passage of the water through it. By so doing it neither increased the amount of water, nor otherwise changed the flow upon the lower estate. It simply permitted it to flow through its premises by its natural course.

As the water was mere surface water, it had the right to make provision for the protection of its premises from injury from it. Its act in closing the passage-way through the embankment, and constructing the ditch, was not an invasion of any of plaintiff's rights. Neither did it create any new duty or obligation from it to him. There is no legal principle upon which it can be said that defendant is bound to protect plaintiff's premises for all time from the surface water which would flow upon them, because for a time it maintained a work which had that effect. The work was

done originally for the amelioration of defendant's estate. and, in that respect it was lawful; but the relative rights and obligations of the parties remained the same after as before it was done.

The fact that a greater quantity of water will flow through the water-way than did before it was closed, does not affect the rights or obligations of these parties. That effect will follow, not from anything which defendant has done or proposed to do, but will be the result of what has been done by other parties. We need not inquire whether those acts are unlawful or not, for, if it should be conceded that they are unlawful, defendant is under no obligation to protect plaintiff from the consequences which will result from them. If the act of the adjacent land-owners in draining their land into the slough was wrongful, defendant has the right, doubtless, to take such action as would protect its own premises from injury by the increased amount of water thrown upon them. But it is not under obligation to protect plaintiff's premises from injury by that cause.

The judgment of the district court will be

REVERSED.

BECK, J., (*dissenting.*) I find it unnecessary to inquire whether the water diverted by defendant was surface water or a stream. That defendant did divert the water, whatever be its character, is admitted. It took control of the water, and directed its course away from the land of plaintiff. Its motive for so doing, doubtless, rested upon benefits, or supposed benefits, which it would receive therefrom. Among these benefits was, doubtless, one regarded of importance, namely, the dispensing with the bridge or trestle-work of perishable materials, and the substitution therefor of the more substantial and safer embankment of earth, which in the end would be cheaper. The act of building the embankment in place of the bridge was inconsistent with the act of again opening it. It was, in effect, a declaration that the bridge was dispensed with, and an invitation for plaintiff,

and all other persons, to so act and to so use and control their lands, which would be affected by the change, as their interests demanded. As plaintiff's land was relieved of water flowing through the bridge, it will be presumed to be beneficial to him, for the reason that all lands, whether cultivated or used for meadow or pasture, of either tame or wild grass, are injured by the overflow of water in excess of the natural rainfall. The law will presume injury from such overflow. Section 1, Phil. Ev., (Cow. & H. & Edw. notes,) 546, marg. p. 656.

But there is direct evidence in the record showing injury which would be sustained by plaintiff from the water. The plaintiff testifies, and the evidence is corroborated by other witnesses, that his lands which would be affected by defendant's act in opening the embankment would be worth twice as much with defendant's embankment closed as it would be with it open.

It appears that plaintiff acquiesced in the change in the embankment caused by filling up the space occupied by the bridge, and, as it was to his advantage, it will be presumed that he sanctioned and accepted the beneficial act of defendant in filling up the opening originally left in the embankment,—1 Phil. Ev., (Cow. & H. & Edw. notes,) 505, marg. p. 609,—and it will be presumed that plaintiff used his land affected by the water, and improved it, with reference to the change in the embankment, for the reason that it appears from the record that he is in the occupation and use of the land, and has been since the change. No farmer could cultivate or use land similarly situated without improving it, for its use alone, whether for cultivation or for pasture, would improve it; cultivation and use being a source of great improvement of wet lands, or lands in swales, of the character of plaintiff's land.

It clearly appears that to restore the bridge will result in plaintiff's injury. Defendant is now estopped to take from plaintiff the benefits and rights it bestowed upon him by

diverting the water. The facts, as we have just stated them, precisely fill the conditions of an estoppel, as they are tersely and correctly stated by defendant's counsel. The law will not permit defendant, for its own convenience or profit, to change the course of the water of a stream, or surface water, after having established its coûrse, and held out inducements to adjoining owners to believe such a course permanent, and to act accordingly. Such owners would be subject to loss, inconvenience and annoyance, if defendant could, at will, divert the flow of surface water once established by it.

Doubtless the motive of defendant in restoring the bridge, and abandoning the ditch, was to save expense required to sink it deeper, and in securing the embankment from washing, and in protecting the abutments of the bridge at the river. It is not to be doubted that all of this could have been done, but at an expense greater than would have been incurred by removal of the embankment and the reconstruction of the bridge. But these matters should have been considered and weighed before defendant, by the filling up the embankment, conferred rights upon plaintiff. These rights defendant cannot now defeat upon the mere ground that expense will be saved thereby.

In my judgment, the judgment of the district court ought to be affirmed.