JOHN F. DROEGMILLER, appellee, v. CHRIS M. OLSON et al.,
appellants.

No. 47462.

(Reported in 40 N.W. 2d 292)

DECEMBER 13, 1949.

REHEARING DENIED FEBRUARY 10, 1950.

L. V. Gilchrist, of Denison, for appellants.

Welch & Welch, of Logan, and Floyd E. Page, of Denison, for appellee.

GARFIELD, J.—Plaintiff, Droegmiller, owns the south half of a certain section 17 and the northeast quarter of the northwest quarter of a section 20 in Crawford County. County Highway G runs east and west between section 17 on the north and 20 on the south. We are mainly concerned here with the drainage from the southwest quarter of 17. Leo Streck owns the northwest quarter of the northwest quarter of section 20, west of plaintiff's "forty" in that section and south of the southwest forty of his half section in 17.

In 1936 or 1937 the county graded and graveled Highway G and installed a steel bridge (the "west bridge") about 500 feet east of the southwest corner of plaintiff's half section and another such bridge (the "middle bridge") about 850 feet farther east. These two bridges are about where previous culverts or bridges had been located. Along each side of the highway grade there is a ditch which slopes down to the east. The West Soldier drainage ditch crosses Highway G in a northeast-southwest direction about 100 feet west of the southeast corner of plaintiff's southwest quarter section. There is another highway bridge over the Soldier ditch.

A small well-defined ravine enters plaintiff's half section from the west about 300 feet north of its southwest corner and runs southeast toward the west highway bridge. Forty to forty-five acres are in this watershed, on plaintiff's land and west thereof, which naturally drains toward that bridge. North of this ravine another waterway enters plaintiff's land also from the west nearly eighty rods north of his southwest corner. We are convinced the natural flow of water from this depression is mainly east across plaintiff's land toward the Soldier ditch or into a low area somewhat north and east of the middle bridge.

Although plaintiff denies he ever built a dike, it clearly appears that shortly after Highway G was graded and graveled (in 1936 or 1937), for his own benefit and without the consent of anyone, plaintiff built a dike curving northeast and then northwest from the grade of the highway at the northeast corner of the west bridge. Along the west side of the dike a ditch was dug. At least twice between 1937 and 1946 plaintiff cleaned out this ditch and restored the dike to its original height or perhaps made it higher. We are satisfied this dike and ditch divert to the west bridge a substantial amount of water which naturally flows east from the second waterway on plaintiff's land. It is mainly this water which is in controversy.

After plaintiff had thus diverted water from his farm to the west bridge, Streck, the neighbor on the south, complained to defendant Board that water was coming upon his land out of its natural course. It is conceded the natural flow of water from the *first* ravine on plaintiff's farm is south under the west bridge onto the Streck land, thence south to the Soldier ditch which

curves sharply to the west south of Highway G. In 1938, after these complaints from Streck, defendant Board caused to be built a dike along the south side of the south highway ditch on the north side of the Streck land and plaintiff's adjoining forty acres in section 20. This dike commences just southwest of the west bridge and goes about 2000 feet east to the Soldier ditch.

In 1946 defendant Board removed that part of the dike plaintiff had thrown up across the highway ditch on the north side of the grade and built a wing-dike across that ditch from the northeast corner of the west bridge northwest to plaintiff's fence line. This wing-dike permits water from the first ravine on plaintiff's land to continue to escape under the west bridge but sends east along the north highway ditch the water from the second waterway which plaintiff had diverted to the west bridge by means of his dike and ditch.

Plaintiff brought this action in August 1947 to compel defendant Board to remove: the wing-dike constructed by it across the north highway ditch, the dike along the south side of the south highway ditch, the silt from each highway ditch and under the west and middle bridges. Plaintiff also asks that defendants be compelled to install a tube and floodgates in each highway ditch where it outlets into the Soldier ditch to prevent overflow from that ditch.

Defendants deny plaintiff is entitled to relief and ask that he be enjoined from maintaining the dike on his land and from discharging into Highway G water which would not naturally flow there.

The trial court decreed that defendants remove the accumulated dirt and silt from the north highway ditch from the west bridge to the Soldier ditch "to provide an approximately constant fall from west to east" and install in this north highway ditch where it empties into the Soldier an adequate discharge tube and floodgate and then close this highway ditch at such point. Other relief was denied.

Defendants appealed and contend plaintiff should be enjoined from maintaining the dike upon his land north of the highway and from diverting water to the west bridge and that plaintiff is not entitled to the relief granted. Plaintiff later appealed and asserts he should have all the relief asked by him.

Without going into detail, it appears from the evidence that the two dikes built by defendant Board (mainly the wing-dike) and perhaps the silt in the highway ditches and under the west and middle bridges have caused to flow back on plaintiff's land, where it went in its natural course, part of the water plaintiff has diverted by means of his dike and ditch to the west bridge. It is not shown that anything done by defendants of which plaintiff complains has cast upon plaintiff's land water from the first ravine or other water that does not naturally flow over his farm.

It was the duty of the highway authorities to place an opening in the highway grade to permit the escape of water in its natural course from the first ravine on plaintiff's farm. And plaintiff is entitled to the free flow of water from this ravine through the west bridge. Such is the effect of section 309.44, Code, 1946 (4644.44, Code, 1939); Jacobson v. Camden, 236 Iowa 976, 977, 20 N.W. 2d 407, 408, and citations; Nixon v. Welch, 238 Iowa 34, 40, 24 N.W. 2d 476, 479, 169 A. L. R. 1141. See also Code section 309.67. We do not understand defendants contend otherwise.

While the dike along the south highway ditch prevents the water from plaintiff's first ravine from going south across the Streck land in its natural course and sends it east to the Soldier ditch, of course it is of no concern to plaintiff how such water is carried after it leaves his land provided he is not injured thereby. Miller v. Perkins, 204 Iowa 782, 785, 216 N.W. 27.

However, the water from the first ravine is not the cause of this controversy. What plaintiff seeks is to compel the county to assume permanent responsibility for the water he has diverted to the west bridge by means of his dike and ditch and to protect him against the return of such water to its natural course. In effect, plaintiff contends the artificial dike and ditch built by him have become by the lapse of time a natural watercourse and he has the same right as against the county to a free outlet at the west bridge for this diverted water that he has for the water from the first ravine which naturally flows there. Defendants, on the other hand, claim in their cross-petition they are entitled to the removal of the artificial conditions caused by plaintiff.

I. We think plaintiff had no right in the first instance to divert water from his land to the west bridge and compel the

county to furnish him permanent protection from such water. Anton v. Stanke, 217 Iowa 166, 251 N.W. 153, is authority for our conclusion. There Stanke, the dominant owner, diverted water by means of a ditch from one watercourse to another on his land and caused it to be discharged into a ditch along a highway. Subsequently the county board constructed a culvert to permit this diverted water to go upon the servient estate out of its natural course. We held Stanke had no legal right to do what he did.

In Jacobson v. Camden, supra, 236 Iowa 976, 977, 20 N.W. 2d 407, 408, and Pate v. Rogers, 193 Iowa 726, 731, 732, 187 N.W. 451, we held a servient owner is not entitled to have ditches along the highway so constructed and maintained as to fully protect his lands from water naturally flowing thereover or to change the natural course of drainage. As to the water from plaintiff's second waterway which naturally flows across his land, plaintiff is in the position of a servient owner.

67 C. J., Waters, section 303, states: "However, a landowner cannot bring water by artificial channels and discharge it onto a highway at a point other than where it would naturally flow * * *."

The statutes impliedly, if not expressly, prohibit the diversion of water into a public highway out of its natural course.

Code section 465.22 provides, "Owners of land may drain the same in the general course of natural drainage by constructing open or covered drains * * *." And section 465.23 continues, "*When the course of natural drainage of any land runs to a public highway,* the owner of such land shall have the right to enter upon such highway for the purpose of connecting his drain or ditch with any drain or ditch constructed along or across the said highway, but in making such connections, he shall do so in accordance with specifications furnished by the highway authorities * * *." (Italics added.)

After plaintiff had diverted water to the west bridge from the second waterway on his farm, the building of the dike in 1938 along the south side of the highway and the wing-dike at the northeast corner of the west bridge were proper protective or defensive measures. Streck would have been entitled to build a dike along the north side of his own land for protection against

the water diverted by plaintiff and it is not material that the county, not Streck, erected it. See Brightman v. Hetzel, 183 Iowa 385, 394, 167 N.W. 89; Thiessen v. Claussen, 135 Iowa 187, 112 N.W. 545; Priest v. Maxwell, 127 Iowa 744, 104 N.W. 344; Preston v. Hull, 77 Iowa 309, 42 N.W. 305; 3 Farnham on Waters and Water Rights, section 886, page 2576.

 If, as we have held, plaintiff had no right in the first instance to compel the county to furnish him permanent protection from the water diverted by him, he did not acquire such right by lapse of time. We have been slow to hold *even against a private owner* that an artificial change in natural drainage has become a permanent condition which prevents restoration to the natural state. In Hinkle v. Chicago, R. I. & P. Ry. Co., 208 Iowa 1366, 1368, 227 N.W. 419, 420, the railroad was permitted to abandon a ditch along its right of way built and maintained for nearly thirty-six years out of the natural course of drainage and to install an opening in its roadbed in such natural course. The opinion states:

"The mere fact that such a ditch was constructed by the railroad company and maintained for a number of years gives to plaintiffs no right to compel the company to continue to maintain it at its own expense. The mere construction and maintenance of the right-of-way ditch imposed no servitude upon the railroad company's premises, created no rights in the owners of plaintiffs' lands, and imposed no duty or obligation with respect thereto upon the railroad company." (Citations.)

Even more persuasive is King v. Chicago, B. & Q. Ry. Co., 71 Iowa 696, 699, 29 N.W. 406, cited with approval in Hinkle v. Chicago, R. I. & P. Ry. Co., supra. There the railroad had originally constructed a trestle along its roadbed to permit water to pass in its natural course through a swale onto plaintiff's land. Ten years later the railroad filled the space occupied by the trestle by making its embankment continuous. This prevented the passage of water through its grade. The railroad also constructed a ditch along its track through which the water was conducted out of its natural course to a river. Several years after the filling of its embankment and the construction of the ditch the railroad was proceeding to open a waterway through

the embankment at the site of the former trestle. Plaintiff sought to enjoin it from so doing on the theory the railroad had assumed the responsibility of caring for the water by building and maintaining its embankment and ditch and was estopped from making the opening in its grade. In reversing a decree for plaintiff we used this pertinent language: "There is no legal principle upon which it can be said that defendant is bound to protect plaintiff's premises for all time from the surface water which would flow upon them, because for a time it maintained a work which had that effect." (Page 699 of 71 Iowa, 29 N.W. 407.) Upon the authority of the King case the statement just quoted is substantially repeated in 3 Farnham on Waters and Water Rights, section 892, page 2620.

While an artificial ditch may under some circumstances become a natural watercourse as between private individuals, such rule does not apply where the rights of the public are involved. Neither the statute of limitations nor prescriptive right can be urged against the public. Cases involving drainage controversies between private individuals are not applicable to a controversy such as this between a private owner and the county, representing the public. Wheatley v. Cass County, 239 Iowa 932, 939, 31 N.W. 2d 871, 875.

In Brightman v. Hetzel, supra, 183 Iowa 385, 395, 167 N.W. 89, 92, we held: "The rule that an artificial ditch may, under some circumstances, become a natural watercourse by the lapse of time, as between private individuals, does not apply when the rights of the public are involved; for neither the statute of limitations nor prescriptive right can be urged or claimed against the public." This quotation is repeated with apparent approval in Schwartz v. Wapello County, 208 Iowa 1229, 1232, 227 N.W. 91, 93, and Wheatley v. Cass County, supra (page 936 of 239 Iowa, page 874 of 31 N.W. 2d).

Further, plaintiff did not plead or otherwise raise in the court below the statute of limitations, a claim of prescriptive right nor estoppel as against the county. Under familiar principles he is not entitled to raise here any of such issues. Nor does the evidence support any of these claims if they had been raised below and if plaintiff were entitled to urge them against the county.

What is sometimes called the doctrine of dedication and substitution is really estoppel. Cloyes v. Middlebury Electric Co., 80 Vt. 109, 123, 66 A. 1039, 1044, 11 L.R.A., N.S., 693, 699; 56 Am. Jur., Waters, section 15. See also Whipple v. Nelson, 143 Neb. 286, 9 N.W. 2d 288.

A case strikingly similar to the one on appeal, involving a controversy between a private owner and a county board, is Brightman v. Hetzel, supra, 183 Iowa 385, 167 N.W. 89. There plaintiff diverted water to an opening in a public highway along the south side of his farm by means of a dike, just as plaintiff did here. The highway authorities built ditches along each side of the highway to conduct the water east to an outlet, just as was done here. After many years the county board raised the grade of the highway and placed a smaller opening therein at the point where the water diverted by plaintiff came onto the highway. Brightman sought to enjoin the board from so doing on the ground the ditch along his dike had become a natural watercourse which the board could not obstruct. We reversed a decree for plaintiff. This from the opinion is squarely in point here:

"This is not a natural watercourse. It amounts to no more than an open drain upon her land, in which she has gathered surface waters from her land and discharged them at a point other than the one at which they would have been discharged in the natural course of drainage. All the drainage south of this ditch is artificial. The ditches dug by the defendants along the north and south sides of the road, and by Swartfagger on his own land, are defensive ditches, dug and placed there for the purpose of protecting the servient estate from great damage from the manner pursued by the plaintiff in the accumulation and discharge of her surface water. * * *

"Manifestly, then, the plaintiff, by collecting the surface water on her land into a ditch, and discharging it at one point in a different manner and in greater volume upon the public highway than it would come in the course of nature, does not acquire such right by the lapse of time. The right of the plaintiff to insist that the board of supervisors take some action to protect her against the evil consequences that flow from her own act, must rest upon the thought that she has acquired a right to

discharge the surface waters from her land in this way upon the public highway, against which the public has no right now to protect itself. * * *

"To prevent this water from flowing in its natural course, this ditch was constructed, and it was brought to this point in the highway by artificial means; and it is this diverted water, accumulated at this point, that she now claims is flooded back by the defendants upon her land; and it is this water, so diverted by this artificial ditch, that the plaintiff now seeks to compel the highway officials to take care of and protect her against. This cannot be done." (Pages 394, 396 and 397 of 183 Iowa, 167 N.W. 91, 92.)

Plaintiff here seeks to compel the county to do just what Brightman v. Hetzel, supra, holds cannot be done.

This language from Pate v. Rogers, supra, 193 Iowa 726, 732, 187 N.W. 451, 454, is also pertinent:

"The mere maintenance of ditches in a highway by the public authorities for its protection, through which a portion of the surface waters accumulating in the highway was carried away from appellant's premises, surely does not entitle him to have the ditches enlarged and so constructed and maintained as to fully protect his land from overflow, or to change the natural course of drainage."

Both Pate v. Rogers and Brightman v. Hetzel, supra, are cited with approval in Wheatley v. Cass County, supra, 239 Iowa 932, 936, 939, 31 N.W. 2d 871, 874, 875.

II. As stated, the decree also requires defendants to install in the north highway ditch where it empties into the Soldier ditch an adequate discharge tube with floodgate and to close this highway ditch by filling at this point. We think plaintiff has also failed to establish his right to this relief.

In 1920 or 1921 the Soldier river was straightened in places to make the Soldier ditch. Plaintiff himself testifies no change was made in the river where Highway G crosses it. There is no testimony any water has come on plaintiff's land from the Soldier ditch in the vicinity of the highway after such straightening. The inference from testimony of plaintiff himself, his brother and another of his witnesses is that there has been no

such flooding. The Soldier ditch is several feet lower than the highway ditches at their outlet and they slope down toward the Soldier. There is no showing this part of the decree is necessary for plaintiff's protection.

Further, we know of no statute or decision under which the county may be compelled to protect a landowner against floodwaters from the Soldier river either before or after it was straightened. True, the county as well as an individual could not divert water from the Soldier to the injury of a landowner. See Anton v. Stanke, supra, 217 Iowa 166, 173, 174, 251 N.W. 153, and citations. But it does not appear the road ditches have had or will have this effect.

III. Count II of plaintiff's petition asks that defendants as trustees of the West Soldier drainage district be compelled to install tubes with floodgate attachments through the waste bank of the Soldier ditch both north and south of the west end of the highway bridge so that waters from plaintiff's fields may be drained into the ditch. On motion of defendants this count was stricken because they were under no duty to install such tubes. The ruling was proper.

Neither sections 455.1 nor 455.135, Code, 1946, cited by plaintiff, authorizes the relief sought in Count II. If plaintiff desires to use the Soldier ditch as an outlet for lateral drains from his premises he has that right provided he follows specifications made by the Board of Supervisors in making such connection. See section 455.150 which seems to contemplate the landowner shall bear the expense of the connection. See also Dullard v. Phelan, 204 Iowa 716, 719, 215 N.W. 965. Hogue v. Monona-Harrison Drainage District, 229 Iowa 1151, 296 N.W. 204, cited by plaintiff, is not here applicable.

Plaintiff does not allege the Soldier ditch was not properly constructed according to plans and specifications adopted by the Board. There is no statutory authority for the alteration of such plan in a proceeding like this. Miller v. Monona County, 229 Iowa 165, 169, 294 N.W. 308. It may be presumed that any damages sustained by plaintiff or the then owners of his land from the construction of the ditch were duly allowed.

IV. Although the wing-dike since its construction in 1946 at the northeast corner of the west bridge has fairly well pro-

tected the highway from the water diverted thereto by plaintiff, we think defendants are entitled to an injunction against the maintenance of plaintiff's dike and the diversion of water by him onto the highway as prayed in defendants' cross-petition.

■ While we have not always been careful to observe the rule, where a private owner seeks to enjoin the diversion of surface water he must show substantial injury or damage or definite assurance thereof. Anton v. Stanke, supra, 217 Iowa 166, 170, 171, 251 N.W. 153, and citations; Dullard v. Phelan, supra, 204 Iowa 716, 718, 215 N.W. 965.

In Logsdon v. Anderson, 239 Iowa 585, 595, 30 N.W. 2d 787, 793, we enjoined the maintenance of a diversion dike even though the record was insufficient upon which to base an assessment of damages there sought. We there observed, "As in so many cases of this nature the accent in the evidence in the trial below and in the brief filed in this court is on the claim for injunctive relief."

■ However, we think the diversion out of its natural course of a large quantity of surface water to a public highway, with its resulting deposit of much silt, constitutes an obstruction and a nuisance which the county may have abated without showing injury or pecuniary damage. The rights to the use of- the highway from side to side belong to the public and are not to be impaired in favor of an individual on the ground the highway is not thereby damaged. See Quinn v. Baage, 138 Iowa 426, 114 N.W. 205, and citations; Cowin v. City of Waterloo, 237 Iowa 202, 21 N.W. 2d 705, 163 A.L.R. 1327, and citations.

The enumeration of nuisances in Code section 657.2 includes unlawfully diverting the water of any stream or pond from its natural course or state to the injury or prejudice of others (paragraph 4) and obstructing or encumbering the public roads (paragraph 5).

3 Farnham on Waters and Water Rights, section 886, pages 2576, 2577, states: "A ditch which casts water out of its course is a nuisance, and may be abated as such * * *."

■ That injury or pecuniary damage need not be shown to warrant abatement of a nuisance see Incorporated Town of Ackley v. Central States Electric Co., 204 Iowa 1246, 1253, 1254,

214 N.W. 879, 54 A. L. R. 474; 39 Am. Jur., Nuisances, section 155.

If it be assumed the county, representing the public, should be required to show injury to the highway to be entitled to injunctive relief, we think it sufficiently appears the highway is injuriously affected by the water diverted thereto by plaintiff. It is common knowledge and the evidence fairly shows that a considerable volume of water cannot be diverted to a highway, as it is here, from cultivated ground without depositing much silt in the highway. This adds materially to the burden of maintaining it. Much of the silt deposited under the west bridge is fairly traceable to the water diverted there by plaintiff. The building and maintenance of the wing-dike as a protection against the diverted water was and is an added burden to the county.

We enjoined maintenance of a dike not only in Logsdon v. Anderson, supra, but also in Archer v. Compton, 238 Iowa 1182, 30 N.W. 2d 92, and Hunt v. Smith, 238 Iowa 543, 28 N.W. 2d 213. See also Anton v. Stanke, 217 Iowa 166, 251 N.W. 153.

Since this opinion is filed as winter begins and the ground will be frozen, we are disposed to allow plaintiff five months to remove his dike. If he fails so to do defendants may have it removed at plaintiff's expense. Plaintiff should also be enjoined from further diverting water out of its natural course onto Highway G.

*When plaintiff's dike is removed* and water is no longer diverted to the west bridge, the wing-dike at the northeast corner thereof will be unnecessary and defendants will doubtless want to remove it. They should do so within thirty days after the removal of plaintiff's dike. So that plaintiff in the future may be assured of free passage of water from his first ravine in its natural course through the west bridge defendants are also ordered within such thirty-day period to clean out the silt from the channel under that bridge.

Upon plaintiff's appeal the decree is affirmed. Upon defendants' appeal it is reversed and the cause is remanded for decree and, if necessary, further proceedings in harmony with this opinion.—Affirmed on plaintiff's appeal; reversed on defendants' appeal and remanded.

All JUSTICES concur except MULRONEY, J., who dissents.

MULRONEY, J. (dissenting)—I respectfully dissent. The county highway lies between the dominant (north) and servient (south) land. The story of this case starts with the county's construction of a dike (about 1937) on the south side of the highway, to divert all of the water that flowed under the highway bridge into its south roadside ditch. There had been a bridge over or a culvert under this highway at this place for about forty years to carry the water from the dominant land to the servient land. It is admitted the dike was not constructed to save the highway from damage—as indeed it could not since the diversion was after the water flowed under the highway—and it is further admitted that the bridge channel was ample to carry all of the water flowing therein in 1937.

During the years since 1937 the bridge channel and the south highway ditch became silted up. It would not take an engineer to foresee that this would be the result when the water that once flowed south is turned at right angles after it leaves the bridge channel and forced to flow east. There is not much evidence that the bridge channel ever carried a great flow of water. There is no evidence that the water that flowed from the bridge onto the Streck land before the county dike was installed ever formed a swale or ditch on Streck's land. For a while the county utilized the north highway roadside ditch to carry part of the water that would no longer flow in the silted bridge channel, but when that too became silted, sending the water back on plaintiff's land, plaintiff brought this suit to compel the county to clean out the ditches and bridge channel and remove the dike it built in 1937. The relief given was an order to clean out the north ditch and defendant appeals and plaintiff also appeals and argues he was entitled to more relief; that, "the board of supervisors has no right to maintain the dike along the south side of the road ditch * * *."

The county's defense to plaintiff's action to clean out its ditches or remove its dike was that more than two years prior to its constructing this dike the plaintiff had diverted some water into the bridge channel that would not have gone there in a state of nature; that this diversion was accomplished by a dike on

plaintiff's land. Plaintiff denies the construction of this dike on his land, saying he was merely cleaning out the channel. Mr. Streck testified that plaintiff had been diverting water to this bridge ever since plaintiff owned the farm (shown to be in 1932) but that he made no complaint to plaintiff because of the alleged diversion, though he did complain to the county authorities. He said he told the authorities: "they should favor [him] a little bit." To me this is no defense at all. The county engineer testified he knew all about this alleged diking on plaintiff's land before the county constructed their dike in 1937. The case is quite unusual (seldom do we find a county diverting water into roadside ditches) but I fail to see how the county can claim a right to leave a dike and silted bridge channel to block the flow of water from dominant land, because the dominant owner, years before, diverted some water into the waterway that would not have gone there in a state of nature. There is no more water now than there was when the county built the dike—or for more than two years before the county built the dike. One would think the county would concede the granting of the relief plaintiff sought—removal of the county's dike—and be forever freed from further responsibility for this water. It had no duty to build it and under several of the cases relied upon in the majority opinion it has no duty to maintain it for the protection of Mr. Streck.

Hinkle v. Chicago, R. I. & P. Ry. Co., 208 Iowa 1366, 227 N.W. 419, cited and quoted from in the majority opinion is not authority for the defendant. It holds the servient owner could not compel the removal of a culvert through a railroad fill lying between dominant and servient land—even though the fill without a culvert had existed for many years and the railroad had tried, unsuccessfully, to divert the water from the dominant land, down the right of way to a river. The case is no authority for defendant here. Rather it is authority for plaintiff. That is exactly the relief plaintiff argues he is entitled to on his appeal—removal of the dike constructed by the county that blocked the water from flowing from the dominant to the servient land.

The same can be said of King v. Chicago, B. & Q. Ry. Co., 71 Iowa 696, 29 N.W. 406, which the majority deems "more persuasive" than the Hinkle case. Here again the suit is by the

servient owner seeking to enjoin the railroad from making an opening in the embankment that lay between dominant and servient land, after the railroad had made an unsuccessful attempt to divert the water in a ditch along the track to a river. Again I say this case would be authority for granting the relief plaintiff seeks on his appeal. As applied to this case it would mean that Mr. Streck would have no right to enjoin the county from removing its dike and some authority that he could not complain if the flow had been augmented by the dominant owner during the time the waterway had been obstructed by the dike. Section 309.67, Code, 1946, charges the county with the duty to keep all bridges open and free from obstruction. A bridge is not open and free from obstruction when it has been silted up and a dike at the downstream end prevents the free flow of water in a natural waterway.

But it is apparent the county does not want to remove its dike and end its liability. It wants to keep its dike in order to protect the south owner—the dike that blocks a natural waterway—but, because its dike caused silting in the bridge channel and roadside ditches where it diverted the water, the county now wants to take less water than it took when the dike was constructed. I do not think we need to consider whether this increased flow would cause substantial damage to Mr. Streck if the dike were removed. If it would, perhaps he could maintain an action against plaintiff. The point is the increased flow would not and did not cause any damage to the county. In fact as to the county one cannot say there was any increased flow. Under Mr. Streck's testimony the flow was the same for more than two years before the county obligingly built the dike as a "favor" to him and took all of the water.

The majority feels Brightman v. Hetzel, 183 Iowa 385, 167 N.W. 89, is "strikingly similar" to the instant case and good authority for the county. As I read the case it merely holds a landowner cannot divert water into a roadside ditch, then compel the county, after the lapse of twenty years, when the road is becoming impassable because of flooding, to maintain the ditch on the theory that it is part of a natural watercourse. That is not this case. Plaintiff diverted no water into the roadside ditch. The county diverted the water, after it came through the bridge,

into its roadside ditch. The case is decided on the ground that a prescriptive right cannot be gained against the public. I agree with that holding but I do not think the case is applicable. Mr. Streck is not a party to this suit and perhaps one should not discuss his rights, but the above case and other authorities could be cited in support of an argument that he would have no right to compel the county to maintain the dike, which admittedly is for the sole purpose of guarding his servient land from water flowing under the bridge from the dominant land. Plaintiff could not claim any prescriptive right, for in 1937 he claimed no right to turn the water into the roadside ditch. There was just nothing he could do about the water after it left his land, so long as it was not thrown back on his land. Logsdon v. Anderson, 239 Iowa 585, 30 N.W. 2d 787. This case is much like the Logsdon case with the county in the position of the defendant in that case.

There is a theory on which I think the trial court can be sustained. It is sometimes called the doctrine of dedication and substitution and it does not rest upon agreement or prescription. 56 Am. Jur., Waters, section 15. It rests upon the right of riparian owners to have an artificial watercourse, which is apparently permanent, remain permanent, or upon the injustice of ordering a restoration to the old channel when the riparian owners along the old channel have been induced by apparent permanency to rely upon the continued existence of the new. This doctrine of dedication and substitution is well-expressed in Cloyes v. Middlebury Electric Co., 80 Vt. 109, 123, 66 A. 1039, 1044, 11 L.R.A., N.S., 693, 699, where the court stated:

"The artificial conditions created in the creek at Middlebury became the natural conditions—not prescriptively, nor by lapse of time, nor by grant contained in the contract, nor by force of the contract, as such, at all; but by force of the circumstances under which they were created—by dedication and substitution. The contract (which gained nothing by being recorded, since it was not entitled to record) affords evidence of the intention to make the changes permanent—a dedication for all time. The right of the then riparian owners to have the new conditions continue attached at once upon the completion of the work."

See also 56 Am. Jur., Waters, section 15, and Whipple v. Nelson, 143 Neb. 286, 9 N.W. 2d 288. A case somewhat in point on the facts is Miller v. Perkins, 204 Iowa 782, 216 N.W. 27. In that case there was a railroad track, constructed on a fill, between the dominant tract and the servient tract. The railroad built a culvert under its tracks and the servient owner obtained permission from the railroad to construct a dam and ditch on the railroad's right of way to a swale some distance east of the culvert. In time this ditch silted and the dam caused the culvert to fill so the water backed up on the dominant owner's land. We held the servient owner must maintain the artificial ditch it had constructed on the railroad's right of way so that the water would not back up on the dominant owner's land.

The doctrine is based on the theory that it is better to hold the creator of the artificial and seemingly permanent condition to performance of the apparent dedication, which was substituted for the state-of-nature plan of drainage. In short, it is equity to continue the artificial rather than restore the natural. I see no reason in principle why such a rule should not be invoked against a county. As stated it is not based on prescription or agreement. It is based on apparent permanency. Is a county harmed when it constructs an apparently permanent channel and takes water away so it will not again trouble landowners, if it is called upon to maintain that channel? To hold otherwise would mean that it could take the water as long as certain county officials desired to favor abutting landowners and, after the abutting landowners had been induced to believe the improvement permanent, it could abandon the project to the landowners' damage.

I will admit this theory is not argued but it is one that I think is applicable here and one that will sustain the trial court. Also there is no evidence that Mr. Streck, the south owner, changed his position after the county took all of the water— though I think we can assume he was much benefited by the county's action. There is evidence from which we can assume plaintiff, relying upon the permanency of the county's ditch, was able to farm the west part of his farm. The dike which the county constructed as a "favor" to Mr. Streck took many months to build with WPA labor and I think it can be said to be apparently permanent.

This is an equity case, triable de novo here. We get at best an unclear picture of the entire situation. The trial court, with consent of counsel, had the additional advantage of viewing the land involved. The majority leaves the plaintiff in the dilemma of a dominant owner with no right to compel the maintenance of the flow of water off of his land that has existed for ten or twelve years, or perhaps longer. He lost this right under the majority reasoning, not because he turned any water into the highway ditches that are now blocked with silt, but because the county turned the water into the highway ditches. The majority says the plaintiff can gain no prescriptive right against the county to compel it to maintain these ditches. The majority also says the county can maintain the dike at the end of the bridge—admittedly there for the sole purpose of protecting the south landowner. I think equity and fairness should demand that the county be compelled to maintain its ditches or at least one of them to carry the flow of water its dike blocked or be compelled to remove the dike. The county does not want to remove its dike and end its liability so I think the trial court's order to clean out the north ditch should be affirmed.