# IN THE COURT OF APPEALS OF IOWA

No. 22-0882
Filed June 7, 2023

IN THE MATTER OF THE ESTATE OF FRANCIS O. GLASER, Deceased.

JUDY E. BOWLING, Fiduciary of the Estate of FRANCIS O. GLASER and STATE OF IOWA ex rel. DEPARTMENT OF REVENUE,
    Appellees,

vs.

SHERRY M. KINDSFATHER,
    Appellant.
_____

        Appeal from the Iowa District Court for Jackson County, Sean McPartland, Judge.

        Sherry Kindsfather appeals a district court ruling following a remand in an estate proceeding. **AFFIRMED.**

        John T. Flynn of Brubaker, Flynn & Darland, P.C., Davenport, for appellant.

        David Pillers, Dewitt, for appellee Judy E. Bowling.

        Brenna Bird, Attorney General, and Laurie Heron McCown, Assistant Attorney General, for appellee Iowa Department of Revenue.

        Considered by Bower, C.J., and Greer and Badding, JJ.

**BADDING, Judge.**

This appeal is the latest chapter in the story of decedent Francis Glaser's efforts to avoid paying taxes. In the earlier chapters, we learned that before his death, Glaser transferred real property to his friend, Sherry Kindsfather, with the intent to defraud his creditors, one of which included the Iowa Department of Revenue. *See In re Est. of Glaser*, 959 N.W.2d 379, 381–82 (Iowa 2021). The main story since then has been Kindsfather's attempts to hold onto her ill-gotten property against the department's claim for Glaser's unpaid income taxes in his estate proceeding.

On remand from Kindsfather's first appeal, the district court tried to end the story by approving the administrator's final report and rejecting Kindsfather's argument "that taxes owed by the decedent to the State of Iowa are not a 'debt' or 'charge' of the estate" under Iowa Code section 633.368 (2015). Kindsfather appeals this ruling, raising a mishmash of claims involving limitation of actions, a stipulation by the parties made before remand, bifurcation of trial, sufficiency of evidence, due process, statutory interpretation and construction, res judicata and law of the case, a request for an equitable lien as a remedy, and redemption. We affirm.

## I.    Background Facts and Proceedings

Glaser died intestate in September 2014 after he "pulled a gun on a meeting of the Jackson County Board of Supervisors as he was protesting tax matters and attempted to shoot local officials. In the resulting struggle, he turned the gun on himself and died of a resulting gunshot." *Id.* at 381.

An estate was opened in April 2015. Several creditors filed claims, among them a preferred claim by the department for $106,897.83 in unpaid income taxes.[1]  In June 2016, at the department's request, the administrator of the estate moved to set aside conveyances of property to Sherry Kindsfather that Glaser made before his death, specifically what has been called Lots 11, 12, and 13 in this litigation.  The motion alleged the properties were fraudulently conveyed and sought their inclusion in the gross estate.  *See* Iowa Code § 633.368 ("The property liable for the payment of debts and charges against a decedent's estate shall include all property transferred by the decedent with intent to defraud the decedent's creditors . . . .").  Kindsfather resisted the motion and raised affirmative defenses.

A bench trial was held on the motion in May 2018, at which Kindsfather objected to evidence the administrator and the department sought to present about a farm property that had been transferred to her as beyond the pleadings and barred by the statute of limitations for fraud actions.  *See id.* § 614.1(4).  At the close of evidence, the administrator orally moved to amend the motion to include the farm conveyance.  The district court allowed the amendment and concluded it was not barred by the statute of limitations because it related back to the original motion to set aside conveyances.  On the merits, the court found the conveyances

---

[1] The income taxes were attributable to tax years 2000 through 2012, and they were assessed between 2007 and 2015.  The department's claim was later amended to reflect subsequent assessment of income taxes.  The assessed tax amounts were listed on an attachment to the claim, which was subscribed and sworn to by the director of the department, who affirmed "that the claim against the estate of Francis O. Glaser as herein stated, is just, true, and correct, and remains unpaid, and that there is no legal offset to the same or any part thereof."

of the farm and Lots 11, 12, and 13 were made to defraud creditors. As a result, the court set aside those conveyances.

Kindsfather's subsequent appeal was transferred to this court. *See generally In re Est. of Glaser*, No. 19-0008, 2020 WL 4200830 (Iowa Ct. App. July 22, 2020). She raised claims about the farm property, clean-hands doctrine, homestead exemption, and excessive relief but did not challenge the court's finding that Glaser transferred the properties to her to defraud his creditors. *Id.* at *2–6. On the first issue, we found the district court did not abuse its discretion by allowing the administrator to amend its motion to include the farm transfers. *Id.* at *4. But we concluded the claim was barred by the statute of limitations because it did not relate back to the time of the filing of the motion and reversed the district court's decision to set aside the farm conveyance. *Id.* at *4–5. Kindsfather's claims about the clean-hands doctrine and homestead exemption were rejected, as was her contention that "the district court erred in voiding all Glaser's conveyances instead of ordering just enough relief to satisfy the [department's] liens." *Id.* at *6.

On further review, the supreme court only considered "whether recovery under the late amendment to the estate relates back to the original filing and therefore survives the statute of limitations and whether the district court order provided the administrator with excessive relief." *Glaser*, 959 N.W.2d at 381. The supreme court agreed with our court on the former issue—that the amendment for the farm transfers did not relate back and was therefore barred by the statute of limitations. *Id.* at 381, 384–85. But the court parted ways with us on the excessive-relief issue, holding that "Iowa Code section 633.368 is limited to setting aside the conveyances to the extent necessary to satisfy only the debts and charges against

the estate." *Id.* at 386. As a result, the supreme court reversed and remanded "to the district court with instruction to dismiss the administrator's claim with respect to the farm property as untimely" and "fashion a remedy consistent with [its] interpretation of" section 633.368, which "may be used only to satisfy the debts and charges of the estate." *Id.* at 387.

Back before the district court, Kindsfather filed her "position regarding the appropriate remedies following the remand." She (1) asked the court to limit the department's claim to the stipulated amount of pre-transfer liens at the first trial, (2) argued the transfers could not be considered fraudulent as to the department because those liens were secured, (3) asserted the administrator did not prove the amount of post-transfer liens, (4) claimed any amounts in excess of the stipulated amount of pre-transfer liens are not debts and charges of the estate and thus not collectible, (5) argued the preferred claim filed by the department was statutorily defective, (6) claimed any creditors other than the department are not entitled to recover anything, and (7) reprised her claim about the homestead exemption.

The department simply responded that the court had one directive: "determine the extent of the debts and charges of the estate and convey sufficient property to satisfy those debts and charges, up to and including all of Lots 11, 12, and 13." All of Kindsfather's proposed requests for relief were outside of that directive, according to the department, and she had no ability to dispute the validity of any debts and charges of the estate. In her position statement, the administrator concurred with the department, provided an itemization of the debts and charges against the estate totaling $151,318.42 in comparison to liquid estate assets of

$55,000.00, and requested authorization to sell the real estate to satisfy those debts and charges.

At a telephonic hearing in September 2021, the court framed the issues before it on remand as determining the total debts and charges against the estate and, depending on that figure, which conveyances needed to be set aside to satisfy that amount. The parties agreed those were the issues that needed to be decided. To that end, the department proposed having the administrator prepare a final report showing all debts and charges against the estate and determine which properties needed to be sold to satisfy them. The department continued: "Kindsfather should receive any funds remaining after all debts and charges of the [e]state have been satisfied. If only one or two of the properties are needed to satisfy all debts and charges of the [e]state, the remaining property(ies) should be re-conveyed from the [e]state to Kindsfather." In her briefs that followed, Kindsfather continued to advocate for an outcome that would not result in a sale of any property that had been fraudulently transferred to her.

A second hearing was held in January 2022, following which the court issued a detailed ruling to bring the estate to a close. First, the court rejected Kindsfather's claims that the department was only entitled to recover the amount the parties had previously stipulated were pre-transfer tax liens, totaling $40,278.28, and that the department failed to provide sufficient evidence to show Glaser had delinquent income taxes beyond that amount. The court reasoned the initial trial before the appeal was on the issue of fraudulent conveyances and not the determination of debts and charges of the estate. Next, the court rejected Kindsfather's argument that taxes do not qualify as debts and charges of the

estate. The court then concluded Kindsfather's request for an equitable lien or constructive trust in lieu of setting aside the conveyances was not an appropriate remedy. With those issues out of the way, the court adopted the department's proposal to have the administrator prepare a final report itemizing all debts and charges of the estate, including administrator and attorney fees. Once the final report was filed, any objections considered, and the value of the properties determined, the court advised the parties that it would then determine whether to set aside the conveyances and order the sale of the properties as needed to satisfy the determined debts and charges.

The ensuing final report listed liquid assets of the estate in the amount of $52,799.20 and debts and charges of the estate totaling $181,144.13,[2] resulting in insolvency of $128,344.93.

Kindsfather then filed a motion to reconsider, enlarge, or amend the court's January ruling, as well as an objection to the final report. She also moved for partial summary judgment, generally arguing that Glaser's delinquent income taxes do not qualify as debts and charges against the estate.

---

[2] The debts and charges were itemized as follows:

| | |
|---|---|
| Court costs | $590.00 |
| Attorney fees to date | $22,972.50 |
| Attorney fees estimated to close | $2250.00 |
| Executor reimbursement | $3352.48 |
| Executor fees | $7500.00 |
| Department claim | $138,031.37 |
| McGee claim | $684.96 |
| Mayberry claim | $357.82 |
| Majerus claim | $5405.00 |

In April, the court entered a ruling approving the final report and denying Kindsfather's requests for relief. The court directed the administrator to satisfy the debts and charges against the estate that it had listed in the final report, prioritizing them in accordance with law and, to the extent necessary, sell Lots 11, 12, and 13 to satisfy all obligations. Following the sale, the administrator would have to deliver any remaining funds to Kindsfather and convey any property not required to be sold to Kindsfather. After all of those steps were completed, then the estate would proceed to closing. Kindsfather appeals.

## II. Standard of Review

Equitable probate proceedings are reviewed de novo. *See* Iowa Code § 633.33; Iowa R. App. P. 6.907. To the extent statutory interpretation comes into play, our review is for errors at law. *Quality Plus Feeds, Inc. v. Compeer Fin., FLCA*, 984 N.W.2d 437, 444 (Iowa 2023).

## III. Analysis

### A. Statute of Limitations Claim

For the first time on appeal, Kindsfather claims the district court should have ruled that the income tax liens for tax years 2001, 2002, and 2004 have expired and are barred by a statute of limitations in Iowa Code section 422.26(2). Kindsfather appears to agree this issue was not raised earlier, but she argues that does not matter because the statute of limitations makes the liens moot, a claim that she says can be raised at any time.

We have not found any Iowa case that supports Kindsfather's position, most likely because that's not how the mootness doctrine works. Rather, consistent with the department's argument, appellate courts regularly decline to consider statute-

of-limitations arguments raised for the first time on appeal. *See, e.g.*, *Droegmiller v. Olson*, 40 N.W.2d 292, 297 (Iowa 1949); *Liska v. First Nat. Bank in Sioux City*, 310 N.W.2d 531, 535 (Iowa Ct. App. 1981). We accordingly agree with the department that error is not preserved on this claim.

### B.      Stipulation Claim

Next, Kindsfather argues the court erred when it did not limit the department's recovery to $40,278.28—the amount the parties stipulated at the first trial was then owed on the pre-transfer liens. Though Kindsfather devotes many pages to this argument, it lacks merit.

At the court's request during the trial before the first appeal, the parties stipulated to the amount due on pre-transfer liens, which was relevant to an element of the fraud determination. *See* Iowa Code § 684.4(2)(d) ("Whether, before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit."). They did not, however, stipulate that was the total amount of delinquent taxes owed to the department. That was not even a disputed issue at the first trial, which was limited to determining whether the decedent transferred property with the intent to defraud his creditors. *See id.* § 633.368. Because it is clear from the record that the issue of debts and charges remained to be determined, we summarily reject this argument.

### C.      Bifurcation of Issues

Third, but related to the stipulation claim, Kindsfather argues the court erred by not trying all issues together at the trial before the original appeal. But Kindsfather's own "statement of contested issues of fact and law" only addressed the fraudulent-conveyance issue without discussing the extent of the department's

recovery. The supplement to that statement touched on the same issues. At the trial, the court told the parties the issue before it was only "related to the transfers of certain property." Kindsfather did not object to that issue statement, and her post-trial brief was limited to whether the conveyances were fraudulent.

While Kindsfather now complains the department should have been required to prove its claim at the initial trial, she did not complain about it then or in the first appeal. Kindsfather had a hand in limiting the issues at that point to fraudulent conveyances, and she cannot now complain about alleged error she participated in inviting. *See, e.g.*, *Odegard v. Gregerson*, 12 N.W.2d 559, 562 (Iowa 1944).

### D.    Evidence Claim

Moving on, Kindsfather contends that the preferred claim the department filed is not, in and of itself, sufficient evidence of its entitlement to recovery. The cases she cites in support of this argument are distinguishable, as none of them involve claims by the department for unpaid taxes. *See, e.g.*, *In re Est. of Ewing*, 14 N.W.2d 633, 634 (Iowa 1944) (discussing the reasonableness of a claim for a funeral home bill for the decedent). We agree with the department that state tax claims are different in kind from these other types of claims.

This is partly because, as the department informed the court on remand, the total amount owed by Glaser "went through administrative proceedings. There was an assessment that was issued or a series of assessments that were issued that were not challenged." According to the department's attorney, "Once the assessment is issued, then the taxpayer has sixty days to challenge that assessment, and if that assessment is not challenged, it becomes a final

determination."  *See* Iowa Code § 422.28 ("A taxpayer may appeal to the director for revision of the tax, interest, or penalties assessed at any time within sixty days from the date of the notice of the assessment . . . ."); *Iowa Dep't of Rev. v. Yuska*, No. 11-0291, 2012 WL 3590455, at *2 (Iowa Ct. App. Aug. 22, 2012) (concluding "that in order to challenge the assessment, Yuska was required to exhaust his administrative remedies").  So, in the normal course of things in probate, the department stated,

> [W]e will file a notice of tax liability.  If the administrator has any reason to doubt the validity of that tax liability, then we would work with the administrator to help the administrator understand.  And then it just becomes part of the final report.
> I think this case is unique.  So I think if Ms. Kindsfather had a reason to challenge the underlying tax liability, then she could bring that forth, but I don't think that there's any question as to the validity of the tax.  It seems to me like the only issue that Ms. Kindsfather is presenting is whether or not it is a charge against the estate.

Kindsfather did not disagree with the department on these points.  Indeed, the objections that she filed to the administrator's final report had nothing to do with the validity of the tax debt or how it was calculated.  As a result, we find no merit to Kindsfather's contention that the department did not prove "the amount of income taxes owed by the decedent" or her related argument that her procedural due process rights were violated by the district court's acceptance of the department's claim without allowing her to object to the claim.

### E.    Proxy Argument

Kindsfather argues the department could only collect the tax debt under chapter 422 and its use of the administrator as a proxy in this probate proceeding violated her due process rights.  Kindsfather cites no authority to support this claim, so we find it waived.  Iowa R. App. P. 6.903(2)(g)(3).  In any event, our conclusion

below that income taxes are collectible as debts and charges of the estate defeats her argument.

### F. Income Taxes as Debts and Charges

Kindsfather's most repeated argument is that the court incorrectly interpreted the term "debts and charges" in Iowa Code section 633.368 to include income taxes. From this premise, she argues the court did not have subject matter jurisdiction "to enter an order allowing the Administrator to collect income taxes owed by the decedent against property the decedent transferred to [her]."

Under section 633.368, "[t]he property liable for the payment of debts and charges against a decedent's estate shall include all property transferred by the decedent with intent to defraud the decedent's creditors." The separate terms "charges" and "debts" are to be construed as follows "unless otherwise required by the context": "'[c]harges' includes costs of administration,[3] funeral expenses, cost of monument, and federal estate taxes"; "'[d]ebts' includes liabilities of the decedent which survive, whether arising in contract, tort, or otherwise." Iowa Code § 633.3(6), (12). Yet, section 633.425(6) provides a more specific classification of debts and charges, which includes "[a]ll taxes having preferences under the laws of this state." And before an estate can close, section 633.477 requires a "statement as to whether or not all statutory requirements pertaining to taxes have been complied with." *See also* Iowa Code § 422.27(1) ("A final account of a personal representative, as defined in section 450.1, shall not be allowed by any court unless the account shows, and the judge of the court finds, that all taxes

---

[3] "Costs of administration" is defined in section 633.3(10).

imposed by this subchapter upon the personal representative, which have become payable, have been paid . . . ."); Iowa Admin. Code r. 701-700.10(3) ("In the case of an estate, the income tax liability of the decedent both for prior years and the year of death must be paid to the extent of the probate property subject to the jurisdiction of the court.").

Kindsfather quotes *Eide v. Hottman* to support her position that "a tax is not a debt within the commonly accepted definition of that word." 132 N.W.2d 755, 756 (Iowa 1965) (citation omitted). But that case discussed deductions of debt from moneys and credits for estate tax purposes and considered whether the applicable estate tax that exceeded those moneys and credits of the decedent could be deducted, thus wiping out the estate tax at the end of the day. *See id.*; *see also* Iowa Code § 429.4 (1962). The obvious answer to that question was no. *See Eide*, 132 N.W.2d at 756. Notably, *Eide* was decided under the tax code, not the probate code. *Id.* The modern probate code was not even part of the statutory compilation *Eide* was decided under, as it was not enacted until 1963. *See* 1963 Iowa Acts ch. 326 (codified at Iowa Code ch. 633 (1966)).[4]

Even before the modern probate code, our code has long included something similar to current section 633.425—and public taxes have been considered debts under those statutes. *See* Iowa Code § 635.66 (1962) (providing order of priority for "other demands" against the estate, including "public rates and taxes"); *id.* § 11970 (1931) (same). Specifically, in considering the 1931 statute, the supreme court concluded: "Claims for taxes due from the decedent, even

---

[4] The probate code previously consisted of chapters 631 through 638. All of those chapters were repealed, and only chapter 633 was replaced.

though they may not be filed or approved, constitute a charge against the estate which must be paid by the administrator." *In re Est. of Oelwein*, 251 N.W. 694, 696 (Iowa 1933). This was not a new concept. *See* Iowa Code § 2420 (1888) (classifying "[p]ublic rates and taxes" as a payable demand against the estate); *Findley v. Taylor*, 66 N.W. 744, 745 (Iowa 1896) ("[H]owever the taxes are collected, they are a debt of the person taxed, at least from the time they become due. The taxes in question were due when [the decedent] died, and her estate is liable for their payment." (internal citations omitted)); *see also* Op. Iowa Att'y Gen., 1929 WL 62694, at *1 (Sept. 21, 1929) (concluding "delinquent personal taxes against an estate of a deceased are a preferred claim and payable in the order specified" by statute).

Based on the above, the law is clear that delinquent personal taxes, including income taxes, are a liability of the decedent that survive death under section 633.3(12). Even if they didn't, the taxes would still fall under the more specific classification of debts and charges against the estate under section 633.425(6). We accordingly reject all of Kindsfather's claims on this point.

## G.     Claims about Law of the Case and Res Judicata

Kindsfather next argues the district court erred when it supposedly concluded the supreme court's denials of rehearing and a limited remand were rulings on the merits on some of her post-remand arguments. But the only claim she associates with this argument is that the district court lacked subject matter jurisdiction because income taxes are not debts and charges of an estate. Having rejected that underlying claim, we deny her relief on this claim as well.

### H.    Equitable Lien Request

Getting to her requested relief, Kindsfather argues the court erred by not establishing "an equitable lien to the extent necessary to satisfy only the debts and charges against the estate." Kindsfather submits this was an option because "[t]he supreme court ruled in . . . *Cox v. Waudby*, 433 N.W.2d 716, 720 (Iowa 1988), that the remedy available under Iowa Code section 633.368 is the establishment of an equitable lien on the fraudulently conveyed property." But *Cox* does not involve the probate code or even mention section 633.368. In any event, the statute does not provide for that relief.

Once a conveyance is cloaked in fraud, the property becomes liable for payment of debts and charges against the estate and is recoverable by the personal representative "so far as necessary for the payment." Iowa Code § 633.368. A request for a constructive trust or equitable lien is essentially a request for the fraudulent grantee to "be paid ahead of debts and charges of the estate," at least when the estate is insolvent. *Cf. VanDeWalker v. Lau*, 581 N.W.2d 644, 645 (Iowa 1998). While the value of the properties should cure insolvency of the estate here, it "all passes to his administrator, and must be distributed to creditors pursuant to the requirements of the statute." *Id.* at 647 (citation omitted). But said distribution can only go "so far as necessary for the payment of the debts and charges." Iowa Code § 633.368. Because the establishment of an equitable lien does not place the property in the hands of the administrator for distribution, it is not a proper remedy under the statute.

**I.        Redemption**

Kindsfather finally claims "the district court erred on remand when it failed to rule that [she] has the right to redeem her property from a court ordered sale." She first argues section 684.7(2) gives her a right to redeem.  That statute, however, has nothing to do with redemption; it addresses remedies of *creditors*. Kindsfather also cites Iowa Code section 628.3, concerning "redemption by debtor."  But she is not the debtor, Glaser is, and a fraudulent grantee like Kindsfather has no equitable right to redeem when the conveyance is set aside. *See Howland v. Knox*, 12 N.W. 777, 778–79 (Iowa 1882).  She also cites section 628.13 but does not explain how that provides her a right to redeem.

In any event, Kindsfather never secured a ruling on her buried request for a right of redemption.  Nor did she raise any of the above grounds for a right of redemption in her 1.904(2) motion.  Instead, she seemed to be requesting redemption based on her homestead claim, which was rejected in her first appeal. We accordingly deny this claim as well.

**IV.    Conclusion**

Having considered all of Kindsfather's arguments on appeal, whether specifically mentioned or not, we affirm the judgment of the district court.

**AFFIRMED.**